Jason M. Drangel (JD 7204)
jdrangel@ipcounselors.com
Ashly E. Sands (AS 7715)
asands@ipcounselors.com
Danielle S. Futterman (DY 4228)
dfutterman@ipcounselors.com
Gabriela N. Nastasi
gnastasi@ipcounselors.com
Karena K. Ioannou
kioannou@ipcounselors.com
EPSTEIN DRANGEL LLP
60 East 42nd Street, Suite 2520
New York, NY 10165
Telephone:     (212) 292-5390
Facsimile:     (212) 292-5391
*Attorneys for Plaintiff*
*Kelly Toys Holdings, LLC*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KELLY TOYS HOLDINGS, LLC,<br><br>*Plaintiff*<br><br>v.<br><br>TOP DEPARTMENT STORE d/b/a WWW.SQUISHMALLOWSUS.COM d/b/a WWW.SQUISHMALLOWS-US.COM d/b/a WWW.SQUISHMOLLAWS.COM; PERFECTDISC SQUISHMOLLAWS.COM d/b/a WWW.SQUISHMOLLAWS.COM; WWW.SQUISHMALLOWSUS.COM; WWW.SQUISHMALLOWS-US.COM and WWW.SQUISHMOLLAWS.COM,<br><br>*Defendants* | CIVIL ACTION No.<br><br>**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S *EX PARTE* APPLICATION FOR 1) A TEMPORARY RESTRAINING ORDER; 2) ORDER RESTRAINING DEFENDANTS' WEBSITES AND DEFENDANTS' ASSETS WITH THE FINANCIAL INSTITUTIONS; 3) AN ORDER TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT ISSUE; 4) ORDER AUTHORIZING BIFURCATED AND ALTERNATIVE SERVICE; AND 5) ORDER AUTHORIZING EXPEDITED DISCOVERY**<br><br>**FILED UNDER SEAL** |

# TABLE OF CONTENTS

I. INTRODUCTION ................................................................................................. 1

II. STATEMENT OF RELEVANT FACTS ............................................................ 2

III. ARGUMENT ...................................................................................................... 3

    A. THIS COURT HAS PERSONAL JURISDICTION OVER DEFENDANTS ......................................................................................... 3

        1. Defendants are Subject to Personal Jurisdiction Under N.Y. C.P.L.R. § 302(a)(1) .......................................................................... 3

        2. Exercising Personal Jurisdiction Over Defendants Comports with Due Process ........................................................................................ 5

    B. PLAINTIFF IS ENTITLED TO AN *EX PARTE* TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION ................... 5

        1. Plaintiff is Likely to Prevail on the Merits of Its Lanham Act Claims ................................................................................................. 7

            a) *The Squishmallows Marks Are Strong and Distinctive* ................. 8

            b) *Defendants Have Used Virtually Identical Copies of the Squishmallows Marks* ................................................................... 9

            c) *Defendants' Counterfeit Products Directly Compete With the Squishmallows Products and There Is No Gap to Bridge* ........................................................................................... 9

            d) *Actual Confusion Can Be Inferred Between Defendants' Counterfeit Products and the Squishmallows Products* ............... 10

            e) *Defendants Acted in Bad Faith* ................................................... 10

            f) *Defendants' Counterfeit Products Are of Inferior Quality* ........... 11

            g) *Ordinary Online Retail Consumers Do Not Exercise a High Degree of Care* .............................................................................. 11

        2. Plaintiff is Likely to Prevail on Its Copyright Act Claims ........................ 11

            a) *Plaintiff owns Valid Copyrights in the Squishmallows Works* ............................................................................................. 12

            b) *Defendants Infringed the Squishmallows Works* ......................... 12

         3. Plaintiff is Likely to Prevail on Its State Law Claims .............................. 13

        4. Plaintiff Is Likely to Prevail on Its Cybersquatting Claim ...................... 14

            a) *The Squishmallows Marks Were Distinctive When the Infringing Domain Names Were Registered* ................................. 15

           b)     *The Infringing Domain Names Are Identical or Confusingly Similar to one of the Squishmallows Marks* .................................. 15

           c)     *Defendants' Actions Are In Bad Faith* ......................................... 16

      5.     Plaintiff is Entitled to a Presumption of Irreparable Harm ...................... 16

      6.     The Balance of Hardships Favors Plaintiff ............................................... 17

      7.     Enjoining Defendants from Using the Squishmallows Works and Squishmallows Marks Will Serve the Public Interest.............................. 17

**C.     PLAINTIFF IS ENTITLED TO AN ORDER 1) PREVENTING THE FRAUDULENT TRANSFER OF ASSETS AND 2) FREEZING DEFENDANTS' WEBSITES** ........................................................................ **18**

      1.     Defendants' Assets Must be Frozen ........................................................ 18

      2.     Defendants' Websites Must be Frozen ..................................................... 20

**D.     PLAINTIFF IS ENTITLED TO AN ORDER AUTHORIZING BIFURCATED AND ALTERNATIVE SERVICE OF PROCESS** .............. **20**

**E.     PLAINTIFF IS ENTITLED TO AN ORDER AUTHORIZING EXPEDITED DISCOVERY** .............................................................................. **24**

**F.     PLAINTIFF'S REQUEST FOR A SECURITY BOND IN THE AMOUNT OF $5,000 IS ADEQUATE** ............................................................ **25**

**IV.   CONCLUSION**.................................................................................................... **25**

<u>**TABLE OF AUTHORITIES**</u>

**Cases**

*Advanced Access Content Sys. Licensing Adm'r, LLC v. Shen*, No. 14 Civ. 1112 (VSB), 2018 U.S. Dist. LEXIS 169603 (S.D.N.Y. Sep. 30, 2018) .........................................20, 21

*Advanced Portfolio Techs., Inc. v. Advanced Portfolio Techs., Ltd.*, No. 94 Civ. 5620 (JFK), 1994 U.S. Dist. LEXIS 18457 (S.D.N.Y. Dec. 28, 1994). .................................25

*Aristocrat Leisure Ltd. v. Deutsche Bank Tr. Co. of Am.*, 262 F.R.D. 293 (S.D.N.Y. 2009).......24

*AW Licensing, LLC v. Bao*, No. 15- CV-1373, 2015 U.S. Dist. LEXIS 177101 (S.D.N.Y. Apr. 1, 2015) ................................................................................................... 1, 20, 22

*Ayyash v. Bank Al-Madina*, 233 F.R.D. 325 (S.D.N.Y. 2005) ....................................................25

*Balenciaga Am., Inc. v. Dollinger*, No. 10 Civ. 2912 (LTS), 2010 U.S. Dist. LEXIS 107733 (S.D.N.Y. Oct. 8, 2010) ..................................................................................18

*Best Van Lines, Inc. v. Walker*, 490 F.3d 239 (2d Cir. 2007) ..............................................3, 4, 5

*Broad. Music, Inc. v. Prana Hosp.*, Inc., 158 F. Supp. 3d 184 (S.D.N.Y. 2016) ........................17

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (U.S. 1985).........................................................5

*Calder v. Jones*, 465 U.S. 783 (1984)...........................................................................................5

*Chanel, Inc. v. Handbagstore*, No. 20-CV-62121-RUIZ/STRAUSS, 2021 U.S. Dist. LEXIS 122842 (S.D. Fla. June 30, 2021) ..............................................................22

*Chloe v. Queen Bee of Beverly Hills*, *LLC*, 616 F.3d 158 (2d Cir. 2010).......................................4

*Dama S.P.A. v. Doe*, No. 15-cv-4528 (VM), 2015 U.S. Dist. LEXIS 178076 (S.D.N.Y. June 12, 2015) ................................................................................................ 19, 22, 24

*Dev. Specialists, Inc. v. Sullivan (In re Coudert Bros. LLP)*, No. 16-CV-8248 (KMK), 2020 U.S. Dist. LEXIS 12407 (S.D.N.Y. Jan. 23, 2020)...................................23

*Diesel S.P.A. v. Doe*, 2016 U.S. Dist. LEXIS 2720 (S.D.N.Y. Jan. 8, 2016) ..........................9, 16

*Diorama Trading Co., Inc. v. J Waller Thompson U.S.A., Inc*., 2005 U.S. Dist. LEXIS 22830 (S.D.N.Y. Sept. 6, 2005) ...................................................................................14

*Doctor's Assocs., Inc. v. Stuart*, 85 F.3d 975 (2d Cir. 1996)......................................................25

*Energy Brands Inc. v. Spiritual Brands, Inc.*, 571 F. Supp. 2d 458 (S.D.N.Y. 2008)..............3, 5

*EnviroCare Techs., LLC v. Simanovsky*, No. 11-CV-3458, 2012 U.S. Dist. LEXIS 78088, 2012 WL 2001443 (E.D.N.Y. June 4, 2012) .......................................................4

*Federal Express Corp. v. Federal Espresso, Inc.*, 201 F.3d 168 (2d Cir. 2000))..........................7

*Feist Publ'ns, Inc. v. Rural Telephone Serv. Co.*, 499 U.S. 340, 361 (1991) .............................. 12

*Fendi Adele S.R.L. v. Filene's Basement, Inc.*, 696 F. Supp. 2d 368 (S.D.N.Y. 2010) ................. 8

*FTC v. PCCare247 Inc.*, 2013 U.S. Dist. LEXIS 31969 (S.D.N.Y. Mar. 7, 2013)..................... 22

*Gaste v. Kaiserman*, 863 F.2d 1061 (2d Cir. 1988)........................................................ 13

*Gucci Am. v. Bank of China*, 768 F.3d 122 (2d Cir. 2014)............................................. 19

*Gucci Am., Inc. v. Weixing Li*, 135 F. Supp. 3d 87 (S.D.N.Y. 2015) ...................................... 4, 20

*Gucci America, Inc., et al v. Alibaba Group Holding LTD, et al*, No. 1:15-cv-03784
    (PKC) (S.D.N.Y. June 23, 2015) ........................................................................ 1

*Hangzhou Chic Intelligent Tech. Co. v. P'ships & Unincorporated Ass'n Identified on
    Schedule A*, No. 20 C 4806, 2021 U.S. Dist. LEXIS 64064 (N.D. Ill. Apr. 1, 2021)....... 22

*Ideavillage Products Corp. v. Dongguan Opete Yoga Wear Manufacturer Co., Ltd., et al.,*
    No. 17-cv-9099 (JMF) (S.D.N.Y. Nov. 21, 2017) .............................................. 1

*In re Vuitton et Fils, S.A.*, 606 F.2d (2d Cir. 1979)........................................................ 1

*Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945) ...................................................... 3

*JLM Couture, Inc. v. Aimibridal, et al.,* No. 18-cv-1565-JMF (S.D.N.Y. Feb. 21, 2018) ............ 1

*Klipsch Grp., Inc. v. Big Box Store Ltd.,* No. 1:12-cv-06283 (VSB), 2012 U.S. Dist.
    LEXIS 153137 (S.D.N.Y. Oct. 24, 2012)....................................................... 1

*Kraft Gen. Foods, Inc. v. Allied Old English, Inc.*, 831 F. Supp. 123 (S.D.N.Y. 1993).............. 10

*Kwan v. Schlein*, 634 F.3d 224, 229 (2d Cir. 2011)........................................................ 12

*Lewis v. Madej*, No. 15-CV-2676, 2015 U.S. Dist. LEXIS 144384 (S.D.N.Y Oct. 23,
    2015) ........................................................................................................ 23

*Licci v. Lebanese Canadian Bank*, 732 F.3d 161 (2d Cir. 2013)................................... 3

*Local 1814, Int'l Longshoremen's Ass'n v. N.Y. Shipping Ass'n, Inc.*, 965 F.2d 1224 (2d
    Cir. 1992) .................................................................................................... 7

*Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*, 799 F.2d 867 (2d Cir. 1986)..................... 9

*Louis Vuitton Malletier v. Burlington Coat Factory Warehouse Corp.*, 426 F.3d 532 (2d
    Cir. 2005) .................................................................................................... 7

*Lucas Nursey v. Grosse*, 359 F 3d. 806 (6th Cir. 2004) ............................................. 14

*Mattel, Inc. v. 86755, et al.,* No. 18-cv-8825-JSR (S.D.N.Y. Sept. 26, 2018) ....................... 25

*Mattel, Inc. v. Animefunstore, et al.*, 18 Civ. 8824 (LAP) (Dkt. 81) (S.D.N.Y. May 1,
    2020) ........................................................................................................ 23

*Mattel, Inc. v. Internet Dimensions, Inc.*, 2000 U.S. Dist. LEXIS 9747 (S.D.N.Y. July 13, 2000) .................................................................................................................. 15

*Microsoft Corp. v. Does*, No. 12-CV-1335 (SJ)(RLM), 2012 U.S. Dist. LEXIS 162122, 2012 WL 5497946 (E.D.N.Y. Nov. 13, 2012) ................................................. 21

*Milliken v. Meyer*, 311 U.S. 457 (1940) ............................................................... 5

*Mint, Inc. v. Iddi Amad*, No. 10 Civ. 9395 (SAS), 2011 U.S. Dist. LEXIS 49813 (S.D.N.Y. May 9, 2011) ...................................................................................... 12

*Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306 (1950) ................................ 24

*Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306 (1950) ........................... 22

*N. Am. Olive Oil Ass'n v. Kangadis Food Inc.*, 962 F. Supp. 2d 514 (S.D.N.Y. 2013) .............. 14

*N.Y. State Soc'y of CPA's v. Eric Louis Assocs.*, 79 F. Supp. 2d 331 (S.D.N.Y. 1999) ............... 10

*N.Y.C. Triathlon, LLC v. NYC Triathlon Club, Inc.*, 704 F. Supp. 2d 305 (S.D.N.Y. 2010) ....... 17

*National Association for Stock Car Auto Racing, Inc. v. Does*, 584 F. Supp. 2d 824 (W.D.N.C. 2008) ............................................................................................. 24

*North Face Apparel Corp. v. TC Fashions, Inc.*, 2006 U.S. Dist LEXIS 14226 (S.D.N.Y. Mar. 30, 2006) ............................................................................................. 18

*Omega S.A. v. Omega Eng'g*, 228 F. Supp. 2d 112 (D. Conn. 2002) ........................... 15

*P&G v. Colgate-Palmolive Co.*, 199 F.3d 74, 77 (2d Cir. 1999) ................................. 12

*Polaroid Corp. v. Polarad Elecs. Corp*. 287 F.2d 492 (2d Cir. 1961) ........................... 8

*Polymer Technology Corp. v. Mimran*, 975 F.2d 58 (2d Cir. N.Y. 1992) ................................... 11

*Pretty Girl, Inc. v. Pretty Girl Fashions, Inc.*, 778 F. Supp. 2d 261 (E.D.N.Y. 2011) ................. 11

*Prot. One Alarm Monitoring, Inc. v. Exec. Prot. One Sec. Serv., LLC*, 553 F. Supp. 2d 201 (E.D.N.Y. 2008) ............................................................................... 10

*Pure Power Boot Camp, Inc. v. Warrior Fitness Boot Camp*, LLC, 813 F. Supp. 2d 489 (S.D.N.Y. 2011) ........................................................................................... 9

*Richemont N. Am., Inc. v. Linda Lin Huang*, No. 12 Civ. 4443 (KBF), 2013 U.S. Dist. LEXIS 136790 (S.D.N.Y. Sep. 24, 2013) ............................................................ 8

*Rovio Entertainment Ltd. and Rovio Animation OY v. Best Baby and Kid Store, et al.*, No. 17-cv-4884-KPF (S.D.N.Y. June 28, 2017) ................................................. 25

*S.E.C. v. Lines*, No. 07 Civ. 11387(DLC), 2009 U.S. Dist. LEXIS 91811 (S.D.N.Y. Oct. 2, 2009) ............................................................................................... 20

*SEC v. Anticevic*, No. 05 CV 6991 (KMW), 2009 U.S. Dist. LEXIS 11480 (S.D.N.Y. Feb. 8, 2009) ........................................................................................... 21

*Solé Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*, 450 F.3d 100 (2d Cir. 2006)................. 3

*Stora v. Don't Ask Why Outfitters,* 2016 U.S. Dist. LEXIS 170172 (E.D.N.Y. Dec. 7, 2016) ........................................................................................................... 13

*Sulzer Mixpac AG v. Medenstar Indus. Co.*, 312 F.R.D. 329 (S.D.N.Y. 2015) .............. 21, 22, 23

*Tcpip Holding Co. v. Haar Communs. Inc.*, 244 F.3d 88, 100 (2d Cir. 2001). ............................. 9

*Tiffany (NJ) Inc. v. eBay, Inc.*, 600 F.3d 93 (2d Cir. 2010) ........................................................... 8

*Tufenkian Import/Export Ventures, Inc. v. Einstein Moomjy, Inc.*, 338 F.3d 127 (2d Cir. 2003) ........................................................................................................... 13

*Vineyard House, LLC v. Constellation Brands United States Operations, Inc.*, No. 4:19-cv-01424-YGR, 2021 U.S. Dist. LEXIS 15702 (N.D. Cal. Jan. 26, 2021) ..................... 16

*Warner Bros. Entm't Inc. v. Doe,* No. 14-CV-3492 (KPF), 2014 U.S. Dist. LEXIS 190098 (S.D.N.Y. May 29, 2014)....................................................................... 19

*Webadviso v. Bank of Am. Corp.*, 448 F. App'x 95 (2d Cir. 2011)............................................... 14

*WowWee Grp. Ltd v. Meirly*, No. 18-CV-706 (AJN), 2019 U.S. Dist. LEXIS 51905 (S.D.N.Y. Mar. 27, 2019) ................................................................................. 4

*Yurman Design, Inc. v. PAJ Inc.,* 262 F.3d 101 (2d Cir. 2001)................................................... 12

**Statutes**

15 U.S.C § 1125(d) ...................................................................................................................... 14

15 U.S.C. § 1057(b) ....................................................................................................................... 8

15 U.S.C. § 1116(d)(1)(a) .............................................................................................................. 6

15 U.S.C. § 1117(a) ...................................................................................................................... 18

17 U.S.C. § 410© ......................................................................................................................... 12

17 U.S.C. § 501(a) ........................................................................................................................ 11

Fed. R. Civ. P. 26(d)(1).................................................................................................................. 24

Fed. R. Civ. P. 65(b) ...................................................................................................................... 5

N.Y. C.P.L.R. § 302........................................................................................................................ 3

**Other Authorities**

S. Rep. No. 106-140 (1999).......................................................................................................... 14

The Hague Convention on the Service Abroad of Judicial and Extra-Judicial Documents in Civil and Commercial Matters, November 15, 1965, Article....................................... 20

# GLOSSARY

| Term | Definition |
|---|---|
| **Plaintiff or Kelly Toys** | Kelly Toys Holdings, LLC |
| **Defendants** | Top Department Store d/b/a www.squishmallowus.com d/b/a www.squishmallows-us.com d/b/a www.squishmollaws.com; Perfectdisc Squishmollaws.com d/b/a www.squishmollaws.com; www.squishmallowsus.com; www.squishmallows-us.com and www.squishmollaws.com |
| **Alibaba** | Alibaba Cloud Computing (Beijing) Co., Ltd., a Chinese company, with addresses of 701-29 7F 2 Haidian Dongsan St Haidan District Beijing, China, and any and all affiliated companies, which operates an e-commerce platform, available at www.alibabacloud.com, that enables users to build websites, create online stores, and manage and market their businesses, among other things |
| **Cloudflare** | Cloudflare, Inc., with an address of 101 Townsend Street, San Francisco, California 94107, and any and all affiliated companies, which operate a cloud-based web infrastructure platform, available at www.cloudflare.com, that enables capabilities to host static websites on a content delivery network |
| **KWT International** | KWT International Inc., with an address of 605 W Victoria St Compton, CA 90220-5511, and any and all affiliated companies, which operate a shipping company |
| **Epstein Drangel** | Epstein Drangel LLP, counsel for Plaintiff |
| **New York Address** | 244 Madison Ave, Suite 411, New York, NY 10016 |
| **Complaint** | Plaintiff's Complaint |
| **Application** | Plaintiff's *ex parte* application for: 1) a temporary restraining order; 2) an order restraining Defendants' Websites (as defined *infra*) and Defendants' Assets (as defined *infra*) with the Financial Institutions (as defined *infra*); 3) an order to show cause why a preliminary injunction should not issue; 4) an order authorizing bifurcated and alternative service; and 5) an order authorizing expedited discovery |
| **Kelly Dec.** | Declaration of Jonathan Kelly in Support of Plaintiff's Application |
| **Nastasi Dec.** | Declaration of Gabriela N. Nastasi in Support of Plaintiff's Application |
| **Squishmallows Applications** | U.S. Trademark Serial Application Nos. 88/471,796 for "SQUISHMALLOWS HUGMEES" for goods in Class 28 and 90/676,140 for "ORIGINAL |

| | |
|---|---|
| | SQUISHMALLOWS," for goods in Class 28 |
| **Squishmallows Registrations** | U.S. Trademark Registration Nos. 6,137,521 for "FLIP A MALLOWS" for goods in Class 28; 5,454,574 for "SQUISHMALLOW" for goods in Class 28; 5,962,289 for "MYSTERY SQUAD" for goods in Class 28; and 2,029,047 for "KELLYTOY" for goods in Class 28 |
| **Squishmallows Marks** | The marks covered by the Squishmallows Registrations and Squishmallows Applications |
| **Squishmallows Works** | The works covered by the U.S. copyright registrations listed in Exhibit C to the Complaint |
| **Squishmallows Products** | A line of loveable buddies made with a super soft, marshmallow-like texture that come in a variety of sizes from 3.5 inch clip-ons to extra large 24 inch plush toys, and include styles such as Hug Mees, Stackables, Mystery Squad and Flip-A-Mallows |
| **Counterfeit or Infringing Products** | Products bearing or used in connection with the Squishmallows Marks and/or Squishmallows Works, and/or products in packaging and/or containing labels and/or hang tags bearing the Squishmallows Marks and/or Squishmallows Works, and/or bearing or used in connection with marks and/or artwork that are confusingly or substantially similar to the Squishmallows Marks and/or Squishmallows Works and/or products that are identical or confusingly or substantially similar to the Squishmallows Products |
| **Defendants' Websites** | Any and all fully interactive websites held by or associated with Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them, that they operate to communicate with consumers regarding their Counterfeit Products and/or through which consumers purchase Counterfeit Products for delivery in the U.S., including, without limitation, Defendants' websites located at www.squishmallowsus.com and www.squishmallows-us.com, along with the domain names associated therewith |
| **Infringing Domain Names** | www.squishmallowsus.com; www.squishmallows-us.com and www.squishmollaws.com |
| **Defendants' Assets** | Any and all money, securities or other property or assets of Defendants (whether said assets are located in the U.S. or abroad) |
| **Defendants' Financial Accounts** | Any and all financial accounts associated with or utilized by Defendants or Defendants' Websites (whether said accounts are located in the U.S. or abroad) |

| | |
|---|---|
| **Financial Institutions** | Any banks, financial institutions, credit card companies and payment processing agencies, such as PayPal Inc. ("PayPal"), Payoneer Inc. ("Payoneer"), the Alibaba Group d/b/a Alibaba.com payment services (e.g., Alipay.com Co., Ltd., Ant Financial Services Group) and PingPong Global Solutions, Inc. ("PingPong") and other companies or agencies that engage in the processing or transfer of money and/or real or personal property of Defendants |
| **Third Party Service Providers** | Any third party providing services in connection with Defendants' Infringing Products and/or Defendants' Websites, including, without limitation, Internet Service Providers ("ISP"), back-end service providers, web designers, merchant account providers, any providing shipping and/or fulfillment services, website hosts, such as Cloudflare, Inc., domain name registrars, such as Alibaba Cloud Computing LTD. d/b/a HiChina, GoDaddy.com, LLC ("GoDaddy"), KWT International and domain name registries |

# I.    INTRODUCTION

Pursuant to and in accordance with the Federal Rules of Civil Procedure, Plaintiff submits this memorandum of law in support of its *ex parte* Application in light of Defendants' intentional and willful offering for sale and/or sales of Infringing Products.[1]  Courts grant *ex parte* applications for relief in similar matters[2] and Plaintiff requests that the Court grant its Application.

Defendants are businesses, who, upon information and belief, are located in China but conduct business in the U.S. and other countries by means of Defendants' Websites. *Kelly Dec.*, ¶¶ 21-23; *Nastasi Dec.*, ¶¶ 6, 8, 10, Ex. A.  Through Defendants' Websites – which prominently feature the Squishmallows Marks and Squishmallows Works – Defendants offer for sale and/or sell Infringing Products, and market, distribute and ship the Infringing Products to consumers throughout the world, including those in New York. *Kelly Dec.*, ¶ 21; *Nastasi Dec.*, ¶ 3, Ex. A. Sellers of counterfeit products, like Defendants, often use evasive tactics like aliases, false addresses and other incomplete identification information to conceal their identities and avoid detection. *Nastasi Dec.*, ¶ 4. In fact, upon information and belief, the addresses displayed on Defendants' Websites are false, and the WhoIs information for Defendants' Websites are largely incomplete making it virtually impossible for Plaintiff to independently obtain accurate information regarding Defendants' true identities, locations and contact information. *Nastasi Dec.*, ¶¶ 17-21.

Without Plaintiff's authorization or consent, Defendants are manufacturing, importing,

---

[1] Where a defined term is referenced herein but not defined, it should be understood as it is defined in the Glossary.

[2] *See In re Vuitton et Fils, S.A.*, 606 F.2d 1 (2d Cir. 1979) (holding that *ex parte* temporary restraining orders are indispensable to the commencement of an action when they are the sole method of preserving a state of affairs in which the court can provide effective final relief); *see also, e.g.*, *JLM Couture, Inc. v. Aimibridal, et al.*, No. 18-cv-1565-JMF, Dkt. 18 (S.D.N.Y. Feb. 21, 2018); *Ideavillage Products Corp. v. Dongguan Opete Yoga Wear Manufacturer Co., Ltd., et al.*, No. 17-cv-9099 (JMF), Dkt. 19 (S.D.N.Y. Nov. 27, 2017); *Gucci America, Inc., et al v. Alibaba Group Holding LTD, et al*, No. 1:15-cv-03784 (PKC) (S.D.N.Y. June 23, 2015); *AW Licensing, LLC v. Bao*, No. 15- CV-1373, 2015 U.S. Dist. LEXIS 177101, at *2-3 (S.D.N.Y. Apr. 1, 2015); *Klipsch Grp., Inc. v. Big Box Store Ltd.*, No. 1:12-cv-06283 (VSB), 2012 U.S. Dist. LEXIS 153137, at *3-4 (S.D.N.Y. Oct. 24, 2012).

exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or selling Infringing Products to consumers located in the U.S., including New York, through Defendants' Websites. *Kelly Dec.*, ¶¶ 21-23; *Nastasi Dec.*, ¶¶ 3, 8, Ex. A. Defendants further use one of the Squishmallows Marks in the Infringing Domain Names. Defendants' aforementioned actions have caused and will continue to cause irreparable harm to Plaintiff's goodwill and reputation as well as to the unassuming consumers who will continue to believe that Defendants' inferior and potentially dangerous Infringing Products are authorized, sponsored, approved, endorsed and/or licensed by Plaintiff, when, in fact, they are not. *Kelly Dec.*, ¶ 25.

Plaintiff's request for *ex parte* relief is particularly necessary because if Defendants receive notice of this Lawsuit, it is highly likely that Defendants will transfer, conceal and/or destroy: 1) the Infringing Products, 2) the means of making or obtaining such Infringing Products, 3) business records, and 4) any and all other evidence relating to their infringing activities. *Nastasi Dec.*, ¶ 4. Moreover, it will likely hide or dispose of Defendants' Assets. *Id.* In light of the foregoing and considering that it typically takes noticed Financial Institutions and/or Third Party Service Providers a minimum of five (5) days to locate, attach and freeze Defendants' Assets and/or Defendants' Financial Accounts, Plaintiff respectfully requests that the Court order bifurcated service specifically allowing enough time for the Financial Institutions and/or Third Party Service Providers to comply with the TRO before ordering service on Defendants.

## II.     STATEMENT OF RELEVANT FACTS

The facts are contained in the factual Kelly Dec. and the attorney summary Nastasi Dec., plus accompanying exhibits. *See* Kelly Dec.; Nastasi Dec.; Complaint, Exs. A-E. In the interest of brevity, any factual discussion is contained in the legal analysis below.[3]

---

[3] Although Plaintiff acknowledges that it seeks multiple forms of relief, in the interest of brevity and with respect for the Individual Rules and Practices in Civil Cases of each District Judge in the Southern District of New York, Plaintiff

### III.    ARGUMENT

### A.  THIS COURT HAS PERSONAL JURISDICTION OVER DEFENDANTS

Determining personal jurisdiction over a foreign defendant in a federal question case requires a two-step inquiry.  First, courts must look to the law of the forum state to determine whether personal jurisdiction will lie. *Licci v. Lebanese Canadian Bank*, 732 F.3d 161, 168 (2d Cir. 2013) (citing *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 242 (2d Cir. 2007)).  Second, if jurisdiction lies, the court then considers whether the district court's exercise of personal jurisdiction over a foreign defendant comports with due process protections established under the United States Constitution.  *See id.*; *see also Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).  As alleged herein, Defendants' unlawful counterfeiting and infringing activities subject them to long-arm jurisdiction in New York under N.Y. C.P.L.R. § 302(a)(1).[4]  Furthermore, New York's exercise of jurisdiction over Defendants thereunder comports with due process.

### 1.  Defendants are Subject to Personal Jurisdiction Under N.Y. C.P.L.R. § 302(a)(1)

Under § 302(a)(1), there are two requirements that must be met to establish personal jurisdiction: "(1) [t]he defendant must have transacted business within the state; and (2) the claim asserted must arise from that business activity." *Licci*, 732 F.3d at 168 (quoting *Solé Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*, 450 F.3d 100, 103 (2d Cir. 2006)).  In applying the test for the "transacts business" prong of § 302(a)(1), "New York decisions … tend to conflate the long-arm statutory and constitutional analyses by focusing on the constitutional standard," ergo, "a defendant need not be physically present in New York to transact business there within the meaning of [this first prong]," so long as the defendant has engaged in "purposeful activity," for

---

respectfully submits this memorandum of law in support of its Application.  Plaintiff will promptly provide supplemental briefing and/or oral argument on any issue should the Court request it.

[4] Plaintiff respectfully submits that Defendants are also subject to jurisdiction under § 302(a)(3). *See Energy Brands Inc. v. Spiritual Brands, Inc.*, 571 F. Supp. 2d 458, 470 (S.D.N.Y. 2008).  However, this alternative analysis is omitted for brevity.  Plaintiff will promptly provide supplemental briefing on any issue should the Court request it.

example, "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Chloe v. Queen Bee of Beverly Hills*, *LLC*, 616 F.3d 158, 169-71 (2d Cir. 2010) (quoting *Best Van Lines, Inc.*, 490 F.3d at 246-247) (internal quotation marks omitted). The second prong of § 302(a)(1) requires an "articulable nexus or substantial relationship between the business transaction and the claim asserted," however, "a causal relationship between the business transaction and the claim asserted" is not required. *Gucci Am., Inc. v. Weixing Li*, 135 F. Supp. 3d 87, 93 (S.D.N.Y. 2015) (citations omitted) (internal citations omitted) (internal quotation marks omitted). Rather, it is sufficient that "the latter is not completely unmoored from the former." *Id.*

The caselaw on purposeful activity has stopped short of requiring additional conduct beyond maintaining an interactive website that offers products to consumers. *See e.g. WowWee Grp. Ltd v. Meirly*, No. 18-CV-706 (AJN), 2019 U.S. Dist. LEXIS 51905, at *11 (S.D.N.Y. Mar. 27, 2019). Similarly, in *Chloe, supra*, the Second Circuit found that a single act of shipping a counterfeit product might be sufficient to subject him to the jurisdiction of a New York court, although it did not need to delve into such an inquiry as the defendant "operated a highly interactive website offering [counterfeit products] for sale to New York consumers." *Chloe*, 616 F.3d 158, 170; *see also see also EnviroCare Techs., LLC v. Simanovsky*, No. 11-CV-3458, 2012 U.S. Dist. LEXIS 78088, 2012 WL 2001443, at *2 (E.D.N.Y. June 4, 2012) ("[C]ourts in this [C]ircuit have concluded that the single act of selling counterfeit goods in New York is sufficient to invoke jurisdiction.") (collecting cases). Here, however, Epstein Drangel made a purchase from each of Defendants' Websites, specifying the New York Address as the shipping address, and actually received the Counterfeit Product purchased from two of Defendants' Websites at the New York

Address. *Nastasi Dec.*, ¶ 8, Ex. A.[5]  Thus, Plaintiff demonstrated that Defendants sold products directly to consumers in New York over the internet, which demonstrates that they have purposely availed themselves of the privileges of conducting activities in New York under the first prong of the § 302(a)(1).  *See Energy Brands Inc*. v. *Spiritual Brands, Inc.*, 571 F. Supp. 2d 458, 469 (S.D.N.Y. 2008) (collecting cases).

2.  **Exercising Personal Jurisdiction Over Defendants Comports with Due Process**

Asserting personal jurisdiction over Defendants also comports with the Due Process Clause of the U.S. Constitution, as Defendants have "certain minimum contacts … such that maintenance of th[is] suit does not offend 'traditional notions of fair play and substantial justice.'" *Calder v. Jones*, 465 U.S. 783, 788 (1984) (quoting *Milliken v. Meyer*, 311 U.S. 457 (1940)).  Defendants intentionally directed activity towards the New York market, thereby purposefully availing itself of "the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (U.S. 1985).  *See Best Van Lines, Inc.*, 490 F.3d at 243. *Nastasi Dec.*, ¶¶ 3, 8, Ex. A.  Moreover, "as a practical matter, the Due Process Clause permits the exercise of jurisdiction in a broader range of circumstances of N.Y. C.P.L.R. § 302, and a foreign defendant meeting the standards of § 302 will satisfy the due process standard." *Energy Brands Inc. v. Spiritual Brands, Inc.*, 571 F. Supp. 2d 458, 469 (S.D.N.Y. 2008).  Accordingly, Plaintiff respectfully submits that this Court has personal jurisdiction over Defendants in this action.

B.  **PLAINTIFF IS ENTITLED TO AN *EX PARTE* TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

Here, an *ex parte* order is essential to prevent immediate and irreparable injury to Plaintiff.

---

[5] Epstein Drangel has received Counterfeit Products from Defendants' Websites www.squishmallowsus.com and www.squishmallows-us.com. Epstein Drangel has not yet received the purchase it has made from Defendants' Website www.squishmollaws.com.

A temporary restraining order may be granted without written or oral notice to the opposing party or that party's counsel where "it clearly appears from the specific facts shown by affidavit . . . that immediate and irreparable injury, loss or damage will result to the applicant before the adverse party or that party's attorney can be heard in opposition." Fed. R. Civ. P. 65(b). Section 34 of the Lanham Act expressly authorizes this Court to issue *ex parte* restraining orders "with respect to a violation [of the Act] that consists of using a counterfeit mark in connection with the sale, offering for sale, or distribution of goods." 15 U.S.C. § 1116(d)(1)(a).[6]

Once a violation of the Lanham Act is demonstrated, the issuance of an *ex parte* order is appropriate upon showing that: (i) the plaintiff will provide adequate security; (ii) any order other than an *ex parte* order is not adequate to achieve the purposes of 15 U.S.C. § 1114; (iii) the plaintiff has not publicized the requested *ex parte* order; (iv) the plaintiff is likely to succeed on showing that defendant is using counterfeit marks; (v) an immediate and irreparable injury will occur if such *ex parte* order is not granted; (vi) the materials to be seized will be located at the place identified in the application; (vii) the harm to the plaintiff in denying the application outweighs the harm to defendant in granting the order and (viii) if prior notice was given, defendant would destroy, move, hide or otherwise make such matter inaccessible to the court. 15 U.S.C. § 1116(d)(4)(B). As discussed below, Plaintiff meets each of the relevant criteria for the issuance of an *ex parte* temporary restraining order under the Lanham Act.[7]

An *ex parte* temporary restraining order is particularly warranted in cases, such as the

---

[6] Congress' purpose for enacting such *ex parte* remedies was to ensure that courts were able to effectively exercise their jurisdiction in counterfeiting cases and to prevent counterfeiters given prior notice from disappearing or quickly disposing of infringing inventory or records relating to their counterfeiting and illegal actions. *See* Senate-House Joint Explanatory Statement on trademark Counterfeiting Legislation, 130 Cong. Rec. H12076, at 12080 (Oct. 10, 1984).
[7] Plaintiff has expressed its willingness to provide security in conjunction with the *ex parte* relief it seeks. *See* [Proposed] Order, filed herewith. Plaintiff has certified that it has not publicized this Application. *Kelly Dec.*, ¶ 27. Also, since Defendants' location(s) and the location(s) of the Infringing Products are unclear, Plaintiff is not requesting a seizure order in this Application. *Nastasi Dec.*, ¶¶ 4, 21.

instant one, involving offshore counterfeiters who conceal their identities and engage in unlawful and harmful activities over the Internet to avoid revealing their actual locations and identities. *Nastasi Dec.*, ¶¶ 4, 21. Defendants, who, upon information and belief, are located in China and operate their businesses exclusively over the Internet, knowingly and willfully offers for sale and/or sells Infringing Products through Defendants' Websites. *Kelly Dec.*, ¶¶ 21-23; *Nastasi Dec.*, ¶¶ 3, 5, 9. The covert nature of Defendants and its counterfeiting activities make any order other than an *ex parte* temporary restraining order an exercise in futility. The immediate and irreparable harm to Plaintiff's business and reputation, as well as to the goodwill associated with the Squishmallows Works and Squishmallows Marks, in denying its Application for an *ex parte* temporary restraining order greatly outweighs the harm to Defendants' interest in continuing to offer for sale and sell Infringing Products. *Kelly Dec.*, ¶ 25.

"To obtain a preliminary injunction, a plaintiff must establish: '(1) the likelihood of irreparable injury in the absence of such an injunction, and (2) either (a) likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation plus a balance of hardships tipping decidedly' in its favor.'" *Louis Vuitton Malletier v. Burlington Coat Factory Warehouse Corp.*, 426 F.3d 532, 537 (2d Cir. 2005) (quoting *Federal Express Corp. v. Federal Espresso, Inc.*, 201 F.3d 168, 173 (2d Cir. 2000)). The "standards which govern consideration of an application for a temporary restraining order… are the same standards as those which govern a preliminary injunction." *Local 1814, Int'l Longshoremen's Ass'n v. N.Y. Shipping Ass'n, Inc.*, 965 F.2d 1224, 1228 (2d Cir. 1992). Plaintiff meets the standard for a preliminary injunction and the Court should enter a temporary restraining order.

### 1. **Plaintiff is Likely to Prevail on the Merits of Its Lanham Act Claims**

In order to establish a likelihood of success on trademark counterfeiting and infringement claims, a plaintiff must show: (1) that its marks are valid and entitled to protection, and (2) that

defendant's use of plaintiff's marks is likely to cause confusion. *Tiffany (NJ) Inc. v. eBay, Inc.*, 600 F.3d 93 (2d Cir. 2010).

First, the Squishmallows Registrations submitted in conjunction with this Application provide *prima facie* evidence of both the validity of the Squishmallows Marks as well as Plaintiff's ownership of the same. 15 U.S.C. § 1057(b). *Kelly Dec.*, ¶ 11, Ex. B.

Second, a proper likelihood of confusion inquiry generally involves an analysis of the factors set forth in *Polaroid Corp. v. Polarad Elecs. Corp*. 287 F.2d 492, 495 (2d Cir. 1961). Yet, "where counterfeit marks are involved, it is not necessary to conduct the step-by-step examination of each *Polaroid* factor because counterfeit marks are inherently confusing." *Fendi Adele S.R.L. v. Filene's Basement, Inc.*, 696 F. Supp. 2d 368, 383 (S.D.N.Y. 2010) (internal citations omitted). Instead, "[t]he court need only determine the more fundamental question of whether there are items to be confused in the first place – that is, whether the items at issue . . . are, in fact, counterfeit and whether [d]efendants sold those items, or offered those items for sale." *Id*. at 383 (internal citations omitted). Regardless, even if a *Polaroid* analysis were necessary, a straightforward application of the test demonstrates that likelihood of confusion exists in this case.

Finally, because Plaintiff has shown that it is likely to prevail on its trademark counterfeiting and trademark infringement claims, it has also shown that it likely will prevail on its claims for false designation of origin, passing off and unfair competition. *Richemont N. Am., Inc. v. Linda Lin Huang*, No. 12 Civ. 4443 (KBF), 2013 U.S. Dist. LEXIS 136790, at *14-16 n.15 (S.D.N.Y. Sep. 24, 2013).

### a) *The Squishmallows Marks Are Strong and Distinctive*

In determining the strength of a mark, courts look to: "(1) inherent strength, resulting from the mark's degree of inherent distinctiveness, usually measured on the ladder ranging from unprotectable generic marks to arbitrary, fanciful marks that enjoy the broadest protection, and (2)

acquired strength, reflecting the degree of consumer recognition the mark has achieved." *Tcpip Holding Co. v. Haar Communs. Inc.*, 244 F.3d 88, 100 (2d Cir. 2001). Not only are the Squishmallows Marks arbitrary and inherently distinctive, but regardless, the Squishmallows Marks have in fact acquired distinctiveness from being prominently used in connection with the Squishmallows Products, which have achieved worldwide recognition. *Kelly Dec.*, ¶¶ 3-4, 5-8, 13-17. *See Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*, 799 F.2d 867, 871 (2d Cir. 1986) ("registered trademarks are presumed to be distinctive and should be afforded the utmost protection"). Thus, this factor weighs in Plaintiff's favor.

### b) *Defendants Have Used Virtually Identical Copies of the Squishmallows Marks*

Defendants have used identical copies of the Squishmallows Marks in connection with Defendants' Websites and/or the marketing, promotion, and offering for sale of the Counterfeit Products. *Nastasi Dec.,* ¶¶ 5, 9, Ex. A. Therefore, this factor weighs in Plaintiff's favor. *See Rado Watch Co. v. ABC, Co.*, No. 92 Civ. 3657 (PKL), 1992 U.S. Dist. LEXIS 8356, *11 (S.D.N.Y. June 8, 1992) (noting that "[t]he substantial identity of the marks weighs most heavily in plaintiffs' favor.").

### c) *Defendants' Counterfeit Products Directly Compete With the Squishmallows Products and There Is No Gap to Bridge*

"The proximity of the parties' [goods or] services in the marketplace involves the extent to which they appeal to the same universe of purchasers and compete with each other." *Pure Power Boot Camp, Inc. v. Warrior Fitness Boot Camp*, LLC, 813 F. Supp. 2d 489, 544 (S.D.N.Y. 2011). Here, Defendants' Counterfeit Products on the one hand, and Plaintiff's Squishmallows Products on the other, fall within the same categories of services and goods (i.e., toys). Moreover, "Defendants' repeated use of Plaintiff's marks [the Squishmallows Marks] throughout the Infringing Websites shows that they intend to target the same consumers." *Diesel S.P.A. v. Doe*, No. 14-CV-4592 (KMW), 2016 U.S. Dist. LEXIS 2720, at *11 (S.D.N.Y. Jan. 8, 2016).

Consequently, it is clear that Defendants' Counterfeit Products are in direct competition with those of Plaintiff and there is no bridge to gap; therefore, these two factors weigh in favor of Plaintiff. *See id.* (finding that these two factors weighed in favor of the plaintiff when the products fell into the same general categories, defendants repeatedly used the plaintiff's marks throughout the websites at issue and made "deliberate efforts to mimic the appearance of" plaintiff's authorized online retailers").

    **d)** ***Actual Confusion Can Be Inferred Between Defendants' Counterfeit Products and the Squishmallows Products***

    Since Defendants are using the Squishmallows Marks, or spurious designations thereof that are identical to, substantially indistinguishable from, or confusingly similar to the Squishmallows Marks on or in connection with Defendants' Websites, and the advertising marketing, promotion, offering for sale and/or sale of the Counterfeit Products, actual confusion can be inferred. *Kelly Dec.*, ¶¶ 21-23, Ex. D. Plaintiff, however, does not need to prove actual confusion, only a likelihood of confusion to obtain equitable relief. *See Prot. One Alarm Monitoring, Inc. v. Exec. Prot. One Sec. Serv., LLC*, 553 F. Supp. 2d 201, 206 (E.D.N.Y. 2008).

    **e)** ***Defendants Acted in Bad Faith***

    Given that Defendants chose to use marks that are virtually identical to the Squishmallows Marks in connection with the offering for sale and/or sale of virtually identical products and/or services, it can be presumed that Defendants intended to trade off of the goodwill and reputation of Plaintiff, the Squishmallows Marks and Squishmallows Products. *Kelly Dec.*, ¶¶ 21-25, Ex. D; *see also Kraft Gen. Foods, Inc. v. Allied Old English, Inc.*, 831 F. Supp. 123, 132 (S.D.N.Y. 1993). Because Defendants' counterfeiting and infringing actions are unquestionably willful, "likelihood of confusion will be presumed as a matter of law." *N.Y. State Soc'y of CPA's v. Eric Louis Assocs.*, 79 F. Supp. 2d 331, 340 (S.D.N.Y. 1999).

#### f) *Defendants' Counterfeit Products Are of Inferior Quality*

The Squishmallows Products are manufactured with high quality materials. *Kelly Dec.*, ¶ 16. Plaintiff has neither authorized Defendants' use of the Squishmallows Marks or confusingly similar marks in connection with Defendants' Websites and/or Defendants' Counterfeit Products, nor approved or tested Defendants' Counterfeit Products being offered for sale and/or sold under or in connection with the Squishmallows Marks and/or confusingly similar marks. *Kelly Dec.*, ¶ 23. Hence, Defendants has encroached on Plaintiff's right to control the quality of the goods manufactured and sold under the Squishmallows Marks. *See Polymer Technology Corp. v. Mimran*, 975 F.2d 58, 62 (2d Cir. 1992). Likewise, consumers' dissatisfaction with Defendants' Counterfeit Products, could be attributed to Plaintiff. Consequently, this factor further supports a finding of likelihood of confusion.

#### g) *Ordinary Online Retail Consumers Do Not Exercise a High Degree of Care*

"Where the purchasers of a product are highly trained professionals, they know the market and are less likely than untrained consumers to be misled or confused by the similarity of different marks." *Virgin Enters. Ltd. v. Nawab,* 335 F.3d 141, 151 (2d Cir. 2003). In contrast, ordinary online "retail customers," (*i.e.,* the consumers of Plaintiff's and Defendant's products), "are not expected to exercise the same degree of care as professional buyers, who are expected to have greater powers of discrimination." *Pretty Girl, Inc. v. Pretty Girl Fashions, Inc.*, 778 F. Supp. 2d 261, 268-269 (E.D.N.Y. 2011) (internal citation omitted). Thus, this factor also favors Plaintiff.

### 2. Plaintiff is Likely to Prevail on Its Copyright Act Claims

Under 17 U.S.C. § 501(a), in order to show likelihood of success on the merits of a copyright infringement claim, a given plaintiff must demonstrate: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Kwan v. Schlein*,

634 F.3d 224, 229 (2d Cir. 2011) (quoting *Feist Publ'ns, Inc. v. Rural Telephone Serv. Co.*, 499 U.S. 340, 361 (1991)). As detailed below, Defendants infringed upon the Squishmallows Works.

### a) *Plaintiff owns Valid Copyrights in the Squishmallows Works*

With respect to ownership, "[a] certificate of registration from the United States Register of Copyrights constitutes prima facie evidence of the valid ownership of a copyright." *Mint, Inc. v. Iddi Amad*, No. 10 Civ. 9395 (SAS), 2011 U.S. Dist. LEXIS 49813, at *6 (S.D.N.Y. May 9, 2011); *see also* 17 U.S.C. § 410(c). Thus, Plaintiff's certificates of registration for the Squishmallows Works are *prima facie* evidence of the validity of the copyrights and the facts stated in such registrations. *Kelly Dec.*, ¶ 14, Ex. C.

### b) *Defendants Infringed the Squishmallows Works*

To establish infringement, "the copyright owner must demonstrate that: (1) the defendant has actually copied the plaintiff's work; and (2) the copying is illegal because a substantial similarity exists between the defendant's work and the protectible [sic] elements of plaintiff's [work]." *Yurman Design, Inc. v. PAJ Inc.,* 262 F.3d 101, 110 (2d Cir. 2001).

A plaintiff may demonstrate actual copying "either by direct or indirect evidence." *P&G v. Colgate-Palmolive Co.*, 199 F.3d 74, 77 (2d Cir. 1999) (internal citations omitted). "Indirect copying may be shown by demonstrating that the defendant had access to the copyrighted work and that the similarities between the works are probative of copying." *Id.*

A representative sample of side-by-side comparisons of Plaintiff's Squishmallows Works to Defendants' Infringing Products illustrates that Defendants are copying one or more of the Squishmallows Works by reproducing and/or displaying substantially similar, if not identical, imitations of the Squishmallows Works either embodied in the Infringing Products themselves and/or in connection with the offering for sale and/or sale of Infringing Products. *Kelly Dec.*, ¶¶ 21-22, Ex. B; and *Nastasi Dec.*, ¶¶ 5, 11, Ex. A. Defendants have taken the original and well-

known elements of the Squishmallows Works and used the same and/or elements thereof in Defendants' Infringing Products. *Nastasi Dec.*, ¶¶ 5, 11, Ex. A. Defendants' imitations of the Squishmallows Works are virtually indistinguishable therefrom, which, coupled with Plaintiff's significant and widespread advertising efforts, show that Defendants unquestionably had "access" to the Squishmallows Works. *See id.*; *Mint, Inc.*, 2011 U.S. Dist. LEXIS 49813, at *7; and *Stora v. Don't Ask Why Outfitters,* 2016 U.S. Dist. LEXIS 170172, at *12 (E.D.N.Y. Dec. 7, 2016). Plaintiff has demonstrated, at a minimum, "evidence of a reasonable possibility of access" through its widespread use of its Squishmallows Works as well as the extensive advertising and widespread distribution of the Squishmallows Products. *Gaste v. Kaiserman*, 863 F.2d 1061, 1066 (2d Cir. 1988). This demonstrates that Plaintiff's assertion of Defendants' access to the Squishmallows Works is more than mere speculation.

Further, Defendants' infringing use of the Squishmallows Works is clearly more than *de minimis*. Defendants have taken entire and/or core elements of the Squishmallows Works and have used these, or nearly identical replicas thereof, in connection with the advertising, marketing, distributing, offering for sale and/or sale of the infringing products. In many instances, Defendants have directly copied one or more of the individual components of the Squishmallows Works and has used such elements together in the listings for the Infringing Products. *Nastasi Dec.*, ¶¶ 5, 11, Ex. A. Thus, Plaintiff has established substantial similarity between the Squishmallows Works and Defendants' imitations, and that Defendants copied the same. *See Tufenkian Import/Export Ventures, Inc. v. Einstein Moomjy, Inc.*, 338 F.3d 127, 131 (2d Cir. 2003). Accordingly, Plaintiff respectfully submits that it is likely to succeed on the merits of its copyright claims.

### 3.  Plaintiff is Likely to Prevail on Its State Law Claims

Because Plaintiff has shown a likelihood of success on its Lanham Act claims, Plaintiff has also shown a likelihood of success on its unfair competition and unjust enrichment claims under

New York State law. *N. Am. Olive Oil Ass'n v. Kangadis Food Inc.*, 962 F. Supp. 2d 514, 521 (S.D.N.Y. 2013).

### 4. <u>Plaintiff Is Likely to Prevail on Its Cybersquatting Claim</u>

The Anticybersquatting Consumer Protection Act of 1996 ("ACPA"), which is an amendment to the Lanham Act, applies when a domain name registrant has a bad faith intent to profit by "cybersquatting" a domain name that is "identical or confusingly similar to or dilutive of the distinctive or famous mark of another." 15 U.S.C § 1125(d). A Senate Report accompanying the APCA defined cybersquatters as, among other things, those who "register well-known marks to prey on consumer confusion by misusing the domain name to divert customers from the mark owner's site to the cybersquatter's own site", and "target distinctive marks to defraud consumers, including to engage in counterfeiting activities." *Lucas Nursey v. Grosse*, 359 F 3d. 806, 809 (6th Cir. 2004) (quoting S. Rep. No. 106-140 at 5-6 (1999)); *see also Diorama Trading Co., Inc. v. J Waller Thompson U.S.A., Inc.*, 2005 U.S. Dist. LEXIS 22830, at *2-3 (S.D.N.Y. Sept. 6, 2005). Given that Defendants have registered and used at least three domain names containing one of the Squishmallows Marks, or at the very least, a mark confusingly similar thereto (i.e., the Infringing Domain Names), to divert consumers to Defendants' Websites where they sell Infringing Products, it is clear that Defendants are cybersquatters under the ACPA.

To prevail on an ACPA claim, "a plaintiff must demonstrate that (1) its marks were distinctive at the time the domain name was registered; (2) the infringing domain names complained of are identical to or confusingly similar to plaintiff's mark; and (3) the infringer has a bad faith intent to profit from that mark." *Webadviso v. Bank of Am. Corp.*, 448 F. App'x 95, 97 (2d Cir. 2011). Considering the foregoing factors, for the reasons set forth *infra*, Plaintiff is likely to prevail on their ACPA claim.

**a) *The Squishmallows Marks Were Distinctive When the Infringing Domain Names Were Registered***

As analyzed *supra*, the Squishmallows Marks are strong, distinctive, and have been in continuous use for a substantial period of time, including prior to when the Infringing Domain Names were registered. *Kelly Dec.*, ¶¶ 11-12, Ex. B.

**b) *The Infringing Domain Names Are Identical or Confusingly Similar to one of the Squishmallows Marks***

For purposes of determining whether a domain name is identical or confusingly similar to a trademark under the ACPA, the Court must evaluate the domain and relevant mark(s) "without regard to the goods or services of the parties." 15 U.S.C. § 1125(d)(1)(A). Courts have routinely found that additions of minor or generic words do not weigh against a finding of confusing similarity. *Omega S.A. v. Omega Eng'g*, 228 F. Supp. 2d 112, 127 (D. Conn. 2002) (collecting cases) (finding OMEGAWATCH.com and OMEGATIME.com to be confusingly similar to plaintiff's marks Omega and O, and that a contrary result would "permit a cybersquatter to evade the scope of the statute merely by adding to a distinctive or famous mark a generic term or word"); *see also Mattel, Inc. v. Internet Dimensions, Inc.*, 2000 U.S. Dist. LEXIS 9747 (S.D.N.Y. July 13, 2000) (finding the domain name barbiesplaypen.com to be confusingly similar to BARBIE in light of the use of plaintiff's trademark in the domain name, combined with the usage of the mark on the front page of that website). Here, Defendants registered and used the Infringing Domain Names, which contain one of the Squishmallows Marks in its entirety, in connection with Defendants' Websites, which prominently feature the Squishmallows Marks and Squishmallows Works, and through which Defendants sell Infringing Products. Accordingly, based on these facts and the applicable case precedent, the Infringing Domain Names are unquestionably, at the very least, confusingly similar to one of the Squishmallows Marks.

c) *Defendants' Actions Are In Bad Faith*

"In assessing bad faith for purposes of ACPA, courts may consider the non-exclusive list of statutory factors outlined in 15 U.S.C. § 1125(d)(1)(B)." *Diesel S.P.A.*, 2016 U.S. Dist. LEXIS 2720, at *19. Applying such factors, Courts have found that the registration of a trademark owner's mark for a commercial purpose, as part of a domain name through which counterfeit goods are sold constitutes bad faith. *See id.* Here, Defendants are, *inter alia*, using one of the Squishmallows Marks in the domain names of Defendants' Websites in an attempt to masquerade Defendants' Websites as "authentic" sources of Squishmallows Products. Therefore, Plaintiff respectfully asserts that the Court should hold that Defendants' actions are in bad faith, and Plaintiff is likely to succeed on its ACPA claim.

5. **Plaintiff is Entitled to a Presumption of Irreparable Harm**

On December 27, 2020, the Trademark Modernization Act of 2020 (codified as part of the Consolidated Appropriations Act, 2021, Pub. L. 116-260) was signed into law. The Act, *inter alia*, amended the text of 15 U.S.C. § 1116(a) codified a rebuttable presumption of irreparable harm which, as amended, now reads in relevant part:

> The several courts vested with jurisdiction of civil actions arising under this chapter shall have power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark registered in the Patent and Trademark Office or to prevent a violation under subsection (a), (c), or (d) of section 1125 of this title. ***A plaintiff seeking any such injunction shall be entitled to a rebuttable presumption of irreparable harm upon a finding of a violation identified in this subsection in the case of a motion for a permanent injunction or upon a finding of likelihood of success on the merits for a violation identified in this subsection in the case of a motion for a preliminary injunction or temporary restraining order***.

*See Vineyard House, LLC v. Constellation Brands United States Operations, Inc.*, No. 4:19-cv-01424-YGR, 2021 U.S. Dist. LEXIS 15702, at *36-37 n.16 (N.D. Cal. Jan. 26, 2021). Accordingly,

since Plaintiff has established that it is likely to succeed on the merits of its claims under U.S.C. § 1125(a), Plaintiff is entitled to a presumption of irreparable harm.

6. **The Balance of Hardships Favors Plaintiff**

The balance of hardships unquestionably and overwhelmingly favors Plaintiff. Here, as described above, Plaintiff has suffered, and will continue to suffer, irreparable harm to its business, the value, goodwill and reputation built up in and associated with the Squishmallows Works and Squishmallows Marks and to its reputation as a result of Defendants' willful and knowing sales of substandard imitations of the Squishmallows Products. *Kelly Dec.*, ¶ 25. Any harm to Defendants would only be the loss of Defendants' ability to continue to offer its Infringing Products for sale, or, in other words, the loss of the benefit of being allowed to continue to unfairly profit from its illegal and infringing activities. "Indeed, to the extent defendants 'elect[] to build a business on products found to infringe[,] [they] cannot be heard to complain if an injunction against continuing infringement destroys the business so elected." *Broad. Music, Inc. v. Prana Hosp.*, Inc., 158 F. Supp. 3d 184, 196 (S.D.N.Y. 2016) (internal citation omitted).

7. **Enjoining Defendants from Using the Squishmallows Works and Squishmallows Marks Will Serve the Public Interest**

The public interest will be served by the issuance of a temporary restraining order and preliminary injunction, as "the public has an interest in not being deceived—in being assured that the mark it associates with a product is not attached to goods of unknown origin and quality." *N.Y.C. Triathlon, LLC v. NYC Triathlon Club, Inc.*, 704 F. Supp. 2d 305, 344 (S.D.N.Y. 2010). Here, the public has an interest in being able to rely on the high quality of the Squishmallows Products bearing and/or sold in connection with the Squishmallows Works and/or Squishmallows Marks. *Kelly Dec.*, ¶¶ 24-25. Since Defendants have willfully and knowingly inserted substandard Infringing Products into the marketplace and used the Squishmallows Marks and/or Works on or in connection with Defendants' Websites and Defendants' Infringing Products, the public would

benefit from a temporary restraining order and preliminary injunction halting any further sale and distribution of Defendants' Infringing Products. *Id*.

## C. PLAINTIFF IS ENTITLED TO AN ORDER 1) PREVENTING THE FRAUDULENT TRANSFER OF ASSETS AND 2) FREEZING DEFENDANTS' WEBSITES

### 1. Defendants' Assets Must be Frozen

Considering the nature of Defendants' counterfeiting business, and Plaintiff's showing that it has a high likelihood of succeeding on the merits of its claims, Plaintiff will be entitled to an equitable accounting of Defendants' profits from its sales of Infringing Products. Plaintiff's request for an asset freeze order granting Plaintiff information regarding the location of Defendants' Assets, the attachment of Defendants' Assets and an injunction preventing the transfer from or to Defendants' Financial Accounts by the Financial Institutions and Third Party Service Providers is both necessary and appropriate, and is within this Court's discretion to preserve Plaintiff's right to the relief sought in the Complaint. *See* 15 U.S.C. § 1117(a).[8]

District courts have "authority to freeze those assets which could [be] used to satisfy an equitable award of profits." *North Face Apparel Corp. v. TC Fashions, Inc.*, 2006 U.S. Dist LEXIS 14226, at *10 (S.D.N.Y. Mar. 30, 2006) (internal citation omitted). In doing so, a court "may exempt any particular assets from the freeze on the ground that they [are] not linked to the profits of allegedly illegal activity." *Id.* at *11. The onus is on "the party seeking relief [from any such asset freeze] to 'present documentary proof'" that its profits are not from such illegal activity. *Id.*

Under 15 U.S.C. § 1117(a) and 17 U.S.C. § 504(b), a plaintiff in an action arising thereunder is entitled to recover a defendant's profits derived from the counterfeiting and/or infringement and/or plaintiff's damages. *See Gucci Am. v. Bank of China*, 768 F.3d 122, 131-132

---

[8] *See also, e.g., Balenciaga Am., Inc. v. Dollinger*, No. 10 Civ. 2912 (LTS), 2010 U.S. Dist. LEXIS 107733, at *22 (S.D.N.Y. Oct. 8, 2010).

(2d Cir. 2014) (A copyright and/or trademark "infringer is required in equity to account for and yield up his gains to the true owner," and "profits are then allowed as an equitable measure of compensation."). Specifically, with respect to claims involving the infringement of federally registered copyrighted works and/or those arising under the Lanham Act, it has been established in this Circuit, as well as sister circuits, that district courts have the authority to issue a prejudgment asset restraint injunction in favor of plaintiffs seeking an accounting and/or another equitable remedy against allegedly infringing defendants. *Warner Bros. Entm't Inc. v. Doe,* No. 14-CV-3492 (KPF), 2014 U.S. Dist. LEXIS 190098 (S.D.N.Y. May 29, 2014).

An asset freeze in the instant matter is unquestionably warranted because Defendants, who are foreign entities, which are, upon information and belief, based in China, are manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or selling Infringing Products to U.S. consumers solely via the Internet, and accepting payment for such Infringing Products in U.S. Dollars through Financial Institutions, thereby causing irreparable harm to Plaintiff in the form of lost sales, loss of goodwill and loss of control of its reputation with licensees, retailers and consumers, and can, and most certainly have the incentive to, transfer and hide their ill-gotten funds if their assets are not frozen. *Kelly Dec.*, ¶ 25; *see also Dama S.P.A. v. Doe,* No. 15-cv-4528 (VM), 2015 U.S. Dist. LEXIS 178076, at *4-6 (S.D.N.Y. June 12, 2015).[9] Therefore, Plaintiff respectfully submits that this Court should exercise its inherent equitable power and freeze Defendants' Assets and Defendant's Financial Accounts for the purpose of preserving Defendants' funds and ensuring that a meaningful accounting of their profits can be made.[10]

---

[9] *See also supra* fn. 2.

[10] Upon the entering of an asset freeze, Plaintiff also requests that the Court Order Defendants and/or the Financial Institutions and/or the Third Party Service Providers to immediately identify Defendants' Assets and Defendants' Financial Accounts and the respective current account or fund balances of the same.

## 2. **Defendants' Websites Must be Frozen**

A temporary restraining order which, in part, restrains the Third Party Service Providers from providing services to Defendants' Websites, and from permitting the transfer, sale and/or assignment of Defendants' Websites, is warranted and necessary because the continued offering for sale and/or sale of the Infringing Products by Defendants on Defendants' Websites will result in immediate and irreparable injury to Plaintiff. *Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122, 126 (2d Cir. 2014); *AW Licensing, LLC v. Bao*, No. 15-CV-1373, 2015 U.S. Dist. LEXIS 177101, at *3 (S.D.N.Y. Apr. 1, 2015). Additionally, to the extent the Third Party Service Providers discover additional websites owned and/or operated by Defendants that offer for sale and/or sell Infringing Products, such websites must be frozen as well.

## D. PLAINTIFF IS ENTITLED TO AN ORDER AUTHORIZING BIFURCATED AND ALTERNATIVE SERVICE OF PROCESS

Upon information and belief, Defendants are located in China, and both China and the United States are signatories to the Hague Convention, however, where, as here, Defendants display false and/or no physical addresses whatsoever on Defendants' Websites to shield their true identities, the Hague Convention does not apply. *See, Advanced Access Content Sys. Licensing Adm'r, LLC v. Shen*, No. 14 Civ. 1112 (VSB), 2018 U.S. Dist. LEXIS 169603, at *7 (S.D.N.Y. Sep. 30, 2018) (*quoting* Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, art. I); *see also S.E.C. v. Lines*, No. 07 Civ. 11387(DLC), 2009 U.S. Dist. LEXIS 91811, at *3 (S.D.N.Y. Oct. 2, 2009) ("As Article I of the Hague Convention quite understandably recognizes, it shall not apply where the address of the person to be served with the document is not known." (internal quotation marks omitted)). Here, articulated in the Nastasi Dec., while Defendants' Websites initially indicated that Defendants were located in California and subsequently changed to indicate they were located in the United Kingdom, Epstein Drangel investigated both the California Address and the London Address

displayed on Defendants' Websites and believe these to be false addresses unaffiliated with Defendants and Defendants' Websites. *Nastasi Dec.*, ¶¶ 13-17. Epstein Drangel researched the WhoIs information for Defendants' Websites which indicated that Defendants are located in China, this is corroborated by the fact that Defendants utilized KWT International to ship a Counterfeit Product to the New York Address as, upon information and belief, KWT International ships packages originating from China. *Nastasi Dec.*, ¶¶ 10, 17. Despite Epstein Drangel's attempt to locate an address for Defendants in China, it has been unable to do so. *Nastasi Dec.*, ¶ 18. Accordingly, because Plaintiff is unaware of an address in China for Defendants, the Hague Convention does not apply. *See, id.*; *see also, Microsoft Corp. v. Does*, No. 12-CV-1335 (SJ)(RLM), 2012 U.S. Dist. LEXIS 162122, 2012 WL 5497946, at *2 (E.D.N.Y. Nov. 13, 2012) (concluding that plaintiffs used "diligent efforts" to identify defendants who "operate[d] via the Internet" and had "sophisticated means to conceal their identities and locations," and thus the Hague Convention was "not applicable"); *Advanced Access*, 2018 U.S. Dist. LEXIS 169603, at *10 (Finding the Hague did not apply where "Plaintiff's investigators also conducted additional investigation, without success, to uncover Plaintiff's physical addresses.").

Since the Hague Convention is inapplicable here, Plaintiff may serve international defendants pursuant to Fed. R. Civ. P. 4(f)(3), which enables a court to grant an alternative method of service so long as it: "(1) is not prohibited by international agreement; and (2) comports with constitutional notions of due process." *SEC v. Anticevic*, No. 05 CV 6991 (KMW), 2009 U.S. Dist. LEXIS 11480, at *7 (S.D.N.Y. Feb. 8, 2009). Notably, "[s]ervice under subsection [4(f)] (3) is neither a last resort nor extraordinary relief. It is merely one means among several which enables service of process on an international defendant." *Sulzer Mixpac AG v. Medenstar Indus. Co.*, 312 F.R.D. 329, 330 (S.D.N.Y. 2015). Since counterfeiters, like Defendants, have been known to use

aliases, false addresses and other incomplete identification information to shield their true identities, this is exactly the circumstance where the courts should exercise, as they previously have,[11] the authority to grant alternative methods of service. *Id.* "The decision whether to allow alternative methods of serving process under Rule 4(f)(3) is committed to the sound discretion of the district court." *Id.* [12]

Service by email is not prohibited by international agreement, in fact, U.S. Courts have found that since China allows its own courts to "order service of Chinese process by email on defendants outside China, it cannot credibly object to U.S. courts ordering the same on defendants located in China". *See, e.g.*, *Hangzhou Chic Intelligent Tech. Co. v. P'ships & Unincorporated Ass'n Identified on Schedule A*, No. 20 C 4806, 2021 U.S. Dist. LEXIS 64064, at *11-*12 (N.D. Ill. Apr. 1, 2021) (holding "China has not 'objected' to email service, and the Court's order of email service pursuant to Rule 4(f)(3) was appropriate".) (internal citations omitted); *see also*, *Chanel, Inc. v. Handbagstore*, No. 20-CV-62121-RUIZ/STRAUSS, 2021 U.S. Dist. LEXIS 122842, at *25-30 (S.D. Fla. June 30, 2021).

Service on Defendants by electronic means comports with due process as it is "reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 309 (1950). This Court recently held the bar is clearly met where, as here, the Defendants engaged in online business and regularly communicated with customers through email.

---

[11] *See Dama S.P.A.*, 2015 U.S. Dist. LEXIS 178076, at *6-7; *AW Licensing, LLC*, 2015 U.S. Dist. LEXIS 177101, at *18-19; *FTC v. PCCare247 Inc.*, 2013 U.S. Dist. LEXIS 31969, at *20 (S.D.N.Y. Mar. 7, 2013).

[12] Pursuant to Fed. R. Civ. P (4)(1), service may be affected "by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by The Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents" ("Hague"). Although China is a signatory to it, the Hague Convention "shall not apply where the address of the person to be served with the document is not known." *See* Hague Convention, November 15, 1965, Article 1. Moreover, despite China's objection to service by postal channels under Article 10, this Court has held that such objection does not include service by email and further, that service by email is not prohibited by any international agreement. *Sulzer*, 312 F.R.D. at 332.

*Mattel, Inc. v. Animefunstore, et al.*, 18 Civ. 8824 (LAP) (Dkt. 81) (S.D.N.Y. May 1, 2020); *Nastasi Dec.*, ¶¶ 12; *see also Sulzer*, 312 F.R.D. at 332 (noting that service through email was appropriate where the "email address in question is listed prominently on [defendant's internet homepage…[,] [the defendant] presumably relies at least partially on contact through [its email] to conduct overseas business, and it is reasonable to expect [defendant] to learn of the suit against it through this email address."). While Defendants disclosed addresses on Defendants' Websites, as articulated in the Nastasi Dec., these addresses are most likely or false addresses. *Nastasi Dec.*, ¶¶ 13-17. Accordingly, it is Plaintiff's position that service by e-mail is the most effective means to ensure Defendants are reasonably apprised of this lawsuit as they are more reliable than the unverified physical addresses listed on Defendants' Websites. *Id*.

Defendants run a sophisticated commercial business, and request that sellers contact them via their email addresses, service@squishmallowsus.com, service@squishmallows-us.com; refund@squishmallows-us.com, service@squishmollaws.com and refund@squishmollaws.com. *Nastasi Dec.*, ¶ 12. Moreover, upon completion of Epstein Drangel's purchases from Defendants' Websites, Epstein Drangel received invoices from PayPal which indicated that payment was made to the following email addresses: official@zhixintrade.com and support@xiangli-technology.com *Id*. Accordingly, Plaintiff respectfully submits that service by the above-mentioned email addresses is more reliable and most reasonably calculated to apprise Defendant of notice of this lawsuit and an opportunity to appear and object should they wish to do as compared to the unverified and likely false addresses listed on Defendants' Websites.[13]

---

[13] While Plaintiff believes that the California Address and London Address are false addresses, in addition to the methods of alternative service proposed by Plaintiff herein, should the Court require Plaintiff to do so, it can serve Defendants via personal service at the California Address and via Federal Express at the London Address. "The UK is a signatory to the Hague Convention and does not object to service through postal channels." *Dev. Specialists, Inc. v. Sullivan (In re Coudert Bros. LLP)*, No. 16-CV-8248 (KMK), 2020 U.S. Dist. LEXIS 12407, at *8 (S.D.N.Y. Jan. 23, 2020) (citing *Lewis v. Madej*, No. 15-CV-2676, 2015 U.S. Dist. LEXIS 144384, at *11, n.4 (S.D.N.Y Oct. 23, 2015) ("The United Kingdom does not object to service by [postal channels]." (citation omitted)); *Aristocrat Leisure*

In the instant matter, Plaintiff proposes using Outlook.com as well as Rmail (www.rmail.com), an online service that confirms valid proof of authorship, content, and delivery of an email, as well as the official time and date that the email was sent and received. *Nastasi Dec.*, ¶ 22. Along with service via email, Plaintiff respectfully requests that the Court, in its discretion, permit service via website publication.[14]

Ultimately, service on Defendants by the various means proposed by Plaintiff comports with due process, as these means are "reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane*, 339 U.S. at 309. Service by email, with confirmation of delivery by Rmail and website publication are most likely to provide Defendants with proper and timely notice of this action and Plaintiff's claims. *Dama S.P.A.*, 2015 U.S. Dist. LEXIS 178076, at *7. Therefore, Plaintiff respectfully submits that an order authorizing alternative service benefits all parties and the Court by ensuring that Defendants receive immediate notice of the pendency of this action to move forward expeditiously.[15]

## E. PLAINTIFF IS ENTITLED TO AN ORDER AUTHORIZING EXPEDITED DISCOVERY

Additionally, Plaintiff respectfully requests that the Court order expedited discovery from Defendants, Financial Institutions and Third Party Service Providers regarding the scope and

---

*Ltd. v. Deutsche Bank Tr. Co. of Am.*, 262 F.R.D. 293, 307 (S.D.N.Y. 2009) ("Both the United States and the [UK] are signatories to the Hague Convention and neither country has objected to direct service through postal channels." (citations omitted)). As *Dev. Specialists, Inc.* concluded, "[t]herefore, service via Federal Express to Varanese's primary address in London would meet the requirements of Federal Rule 4(f)(2)(C)(ii). *Id* at 8.

[14] Publication on a website has been deemed appropriate service under Fed. R. Civ. P (4)(3) "so long as the proposed publication is 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *National Association for Stock Car Auto Racing, Inc. v. Does*, 584 F. Supp. 2d 824, 826 (W.D.N.C. 2008) (quoting *Mullane*, 339 U.S. at 315-16).

[15] Plaintiff also respectfully submits that the Court issue an order authorizing Plaintiff to serve the Financial Institutions and/or Third Party Service Providers with notice of the Court's order of the Application via electronic means prior to serving Defendants and with enough time for the Financial Institutions and/or Third Party Service Providers to comply with the Court's order to help expedite the process.

extent of Defendants' counterfeiting activities, as well as Defendants' account details and other information relating to Defendants' Financial Accounts, Defendants' Assets and/or any and all other accounts, including any websites maintained, with the Third Party Service Providers.

Generally, a party may not seek discovery prior to a Rule 26(f) conference unless authorized by a court order. Fed. R. Civ. P. 26(d)(1). In the past, Courts in this District have often applied a four-factor test to determine when expedited discovery may be granted,[16] but now apply a more flexible "good cause" test to examine "the discovery request . . . on the entirety of the record to date and the *reasonableness* of the request in light of all the surrounding circumstances." *Ayyash v. Bank Al-Madina*, 233 F.R.D. 325, 326 (S.D.N.Y. 2005) (internal citation omitted). Regardless of which test, Plaintiff has established that it is entitled to the expedited discovery requested for good cause shown. *See id.* at 327; *Kelly Dec.*, ¶¶ 24-25; *Nastasi Dec.*, ¶¶ 3-4, 21.

## F. PLAINTIFF'S REQUEST FOR A SECURITY BOND IN THE AMOUNT OF $5,000 IS ADEQUATE

In determining the amount of the bond that a moving party must post, this Court is "vested with wide discretion." *Doctor's Assocs., Inc. v. Stuart*, 85 F.3d 975, 985 (2d Cir. 1996). Plaintiff respectfully submits the provision of security in the amount of $5,000.00 is sufficient. *Rovio Entertainment Ltd. and Rovio Animation OY v. Best Baby and Kid Store, et al.*, No. 17-cv-4884-KPF (S.D.N.Y. June 28, 2017).[17]

## IV. CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests that its Application be granted *ex parte* in its entirety.

---

[16]*See Advanced Portfolio Techs., Inc. v. Advanced Portfolio Techs., Ltd.*, No. 94 Civ. 5620 (JFK), 1994 U.S. Dist. LEXIS 18457, at *7 (S.D.N.Y. Dec. 28, 1994).

[17] Moreover, this Court has gone as far as to hold that no security bond is necessary in similar circumstances. *See Mattel, Inc. v. 86755, et al.,* No. 18-cv-8825-RJS-JSR (S.D.N.Y. Oct. 4, 2018) (The Hon. Richard J. Sullivan held that no security bond was necessary because "it strikes me almost as fairly arbitrary.").

Dated: January 20, 2022                    Respectfully submitted,

EPSTEIN DRANGEL LLP

BY: _____
Gabriela N. Nastasi
gnastasi@ipcounselors.com
Jason M. Drangel (JD 7204)
jdrangel@ipcounselors.com
Ashly E. Sands (AS 7715)
asands@ipcounselors.com
Danielle S. Futterman (DY 4228)
dfutterman@ipcounselors.com
Karena K. Ioannou
kioannou@ipcounselors.com
EPSTEIN DRANGEL LLP
60 East 42nd Street, Suite 2520
New York, NY 10165
Telephone:    (212) 292-5390
Facsimile:    (212) 292-5391
*Attorneys for Plaintiff*
*Kelly Toys Holdings, LLC*