UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| KELLY TOYS HOLDINGS, LLC., | | |
| | Plaintiff, | 22 Civ. 558 (PAE) |
| -v- | | OPINION & ORDER |
| TOP DEPARTMENT STORE d/b/a WWW.SQUISHMALLOWSUS.COM d/b/a WWW.SQUISHMALLOWS-US.COM; PERFECTDISC SQUISHMOLLAWS.COM d/b/a WWW.SQUISHMOLLAWS.COM; WWW.SQUISHMALLOWSUS.COM; WWW.SQUISHMALLOWS-US.COM; and WWW.SQUISHMOLLAWS.COM, | | |
| | Defendants. | |

PAUL A. ENGELMAYER, District Judge:

Plaintiff Kelly Toys Holdings, LLC ("Kelly Toys"), a manufacturer and distributor of the Squishmallows plush toys, brings claims of trademark counterfeiting, trademark infringement, false designation, and unfair competition under Sections 32(a) and 43(a) of the Lanham Act, 15 U.S.C. §§ 1114, 1116(d), 1117(b)–(c), 1118, 1125(a), against two China-based online retail stores and three URLs through which the two online stores are alleged to do business. As authorized by a temporary restraining order issued by this Court, Kelly Toys, unable to locate defendants' physical addresses, served process on defendants via multiple known email addresses.

Defendants, who have since appeared, have now moved to dismiss Kelly Toys' complaint under Rule 12(b)(5), claiming insufficient service of process. For the reasons that follow, the Court denies defendants' motion.

I.      **Background**

      A.      **Factual Background**[1]

            1.      **The Parties and Other Relevant Entities**

Kelly Toys is a limited liability company with its principal place of business in Los Angeles, California.  Compl. ¶ 5.

The two China-based online retail store defendants are Top Department Store and Perfectdisc Squishmollaws.com ("Perfectdisc") (together, the "Stores").  *Id.* ¶ 6.  Their addresses in China, if any, are unknown.  *Id.*

The three URLs named as defendants are www.squishmallowsus.com, www.squishmallows-us.com, and squishmollaws.com (collectively, the "URLs").  The Stores are alleged to do business through these URLs.  *Id.* at iii–iv.  Top Department Store conducts its business through all three URLs, and Perfectdisc operates through www.squishmallows-us.com.

            2.      **Kelly Toys' Products and Sales Success**

Kelly Toys manufactures and distributes high-quality plush toys and gifts.  *Id.* ¶ 7.  Kelly Toys sells its products through physical and online retailers, such as Walmart, Justice, Target, and Amazon.  *Id.* ¶¶ 8, 12.  Its brands include Pillow Chums, Kellybaby, Kellypet, and—relevant here—Squishmallows.  *Id.* ¶¶ 7, 9.  Introduced in 2017, Squishmallows are squishable plush toys with a "marshmallow-like texture."  *Id.* ¶¶ 9–10.  Designed to be "lovable buddies," they range in size from 3.5 to 24 inches.  *Id.* ¶ 9.  Squishmallows products are commonly priced between $7.99 and $35.  *Id.* ¶ 13.

---

[1] The facts set out in Sections I.A.1–3 are drawn primarily from Kelly Toys' Complaint, Dkt. 6 ("Compl.").  They are provided as background and do not bear on the resolution of the instant 12(b)(5) motion.  The facts set out in Sections I.A.4 and I.B, which bear on the resolution of the instant motion, are drawn primarily from the sources indicated therein.  Unless otherwise noted, the Court has credited the facts cited as truthful.

Since 2017, Kelly Toys has sold 73 million Squishmallows products worldwide.  *Id.* ¶ 10. In the six months predating the filing of the Complaint on February 2, 2022, the sales of Squishmallows products tripled.  *Id.*  In 2020, Squishmallows received Learning Express's "Best Toy of the Year" award.  *Id.* ¶ 11.  Squishmallows products have expanded into toy styles such as Hug Mees, Stackables, Mystery Squad, and Flip-A-Mallows.  *Id.* ¶ 9; *see also* Dkt. 6-1 (exhibits depicting Squishmallows and related products).

Kelly Toys has sought to protect its products by obtaining trademark registrations with the U.S. Patent and Trademark Office ("PTO").  It currently owns the trademarks for the marks "Squishmallow" (U.S. Trademark Registration No. 5,454,574); "Flip-A-Mallows" (Reg. No. 6,137,521); "Mystery Squad" (Reg. No. 5,962,289); and "Kellytoy" (Reg. No. 2,029,047). Compl. ¶ 15.  Kelly Toys has pending trademark applications with the PTO for the marks "Squishmallows HugMees" (U.S. Trademark Serial Application No. 88/471,796) and "Original Squishmallows" (App. No. 90/676,140).  *Id.*; *see also* Dkt. 6-2 (exhibits of registrations and applications).  Kelly Toys further claims ownership of unregistered trademarks related to its Squishmallows products, such as Squishmallows Works.  *See* Compl. ¶¶ 16–17; *id.* Ex. C.

The Squishmallows products' commercial success has derived from, *inter alia*, its high-quality materials and its marketing through social media, the Squishmallows website, and "word-of-mouth buzz" by its consumers.  Compl. ¶¶ 19–21.  These efforts have generated significant consumer awareness of, and goodwill toward, the Squishmallows products.  *Id.* ¶ 22.

### 3.    Defendants' Challenged Conduct

Kelly Toys, through its investigative efforts, discovered that defendants manufacture and sell online products either confusingly similar to, or identical with, Kelly Toys' Squishmallows

products.  *Id.* ¶ 25.[2]  Defendants market these products through their URLs.  *Id.*  On those

websites, customers can pay for the accused products in U.S. dollars through PayPal.  *Id.* ¶ 26.

A side-by-side comparison of a product by Kelly Toys—"Avery Mallard Duck"—and its

accused counterpart—"8 Inch Avery the Mallard Plush Toy"—that plaintiff presented in its

Complaint is reproduced below:



| Authentic Squishmallow Product Name and Price | Defendant | Defendant's Infringing Product Photo, Listing Title and Price |
|---|---|---|
| Product Name: Avery Mallard Duck<br><br>Retail Price: $29.99 | Website<br>squishmallows-us.com | Listing Title: 8 Inch Avery the Mallard Plush Toy<br><br>Price: $19.99 |

*Fig. 1: Example of Kelly Toys' authentic Squishmallows product and defendants' corresponding
accused product.  Compl., Ex. D at 3; see also id. ¶ 29.*

### 4.    Kelly Toys' Efforts to Locate Defendants in Connection with Service

Plaintiff's counsel attests, in a sworn declaration attached to its opposition to the instant

motion to dismiss, the following.

---

[2] Specifically, Kelly Toys accuses defendants of the following: "manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, and/or selling" products that use or are connected with the Squishmallows Marks, Squishmallows Works, or their packaging.  Compl. ¶ 25.  Many of the accused products are offered under the same names as the names used by Kelly Toys.  *Id.* ¶ 28.  Kelly Toys claims that defendants engaged in their accused conduct knowingly, intentionally, with reckless disregard of or with willful blindness to Kelly Toys' rights, or in bad faith.  *Id.* ¶ 35.

After discovering defendants' websites, counsel purchased, in U.S. dollars, accused products from each URL and ordered them shipped to 244 Madison Avenue, Suite 411, New York, NY 10016.  *Id.* ¶ 31; *see also id.* at iii (Glossary); *id.*, Ex. E (order confirmations and PayPal receipts).

Plaintiff's counsel then sought to identify a physical address to enable service of process. This directed counsel to two physical addresses associated with the three URLs.  Specifically, (1) the sites www.squishmallows-us.com and www.squishmallowsus.com, were associated with Top Department Store, located at 11599 Arrow Road, Rancho Cucamonga, California; and (2) the site www.squishmollaws.com, was associated with Perfectdisc, listed as Hymax Company Limited, and located at 344–354 Gray's Inn Road, London, United Kingdom.  Futterman Aff. ¶ 8; *id.* Ex. C.[3]  A screenshot reflects that, on December 21, 2021, the London address was displayed on www.squishmollaws.com.  Futterman Aff., Ex. B.  No screenshot was provided with respect to the California address.  Plaintiff's counsel did not observe any other address on defendants' websites other than the California and London addresses.  Futterman Aff. ¶ 10.

Follow-up investigations, however, revealed that the California and London addresses were unconnected to any of the defendants.  *Id.* ¶¶ 11–12.  On the contrary, a search into the "WhoIs" information of defendants' websites indicated that defendants were located in China. Beyond that, the search did not reveal any more specific location data.  *Id.* ¶¶ 13, 24.  Consistent with this result, plaintiff's counsel observed, in the course of the test purchases, that defendants

---

[3] The case caption appears incorrect in that it lists Top Department Store as doing business as all three URLs.  This apparent error is of no moment to the instant motion.  The Stores are affiliated, according to the defense, as they trace to a common owner, Zhenbei He.  *See* First and Second He Aff.

used the shipping company KWT International ("KWT"), which was known to ship packages from China.  *Id.*  Defendants have since admitted that they are located in China.  Dkt. 33-2 ¶ 3.

Plaintiff's counsel's ensuing attempts to ascertain defendants' addresses in China were unsuccessful.  Futterman Aff. ¶ 15.  The senders' addresses displayed on the shipping labels on the items purchased in counsel's test orders did not disclose an address connected to any defendant.  The shipping label on the test order received from www.squimallows-us.com displayed "KWT International, Inc., Shipping Center, 605 West Victoria Street, Compton, CA 90220"; the label on the test order received from www.squishmollaws.com listed "Jane, 371 Little Falls Rd., STE 4, Cedar Grove, NJ 07009"; and the label on the test order received from www.squishmallowsus.com listed "Return Warehouse, 147-03 182 St., Jamaica, NY 11413." *Id.* ¶ 16.  A private investigator, hired by plaintiff's counsel, traveled to each of these addresses. The investigator determined that KWT was unaware of the contents or origins of the packages it had shipped.  *Id.* ¶¶ 18, 20–21.  Counsel for KWT, in fact, informed plaintiff's counsel that the shipping label displaying the Compton address had been forged.  *Id.* ¶ 19; *see also id.*, Ex. D (side-by-side image of authentic and forged KWT labels, accompanying KWT email setting out the markers of forgery).

Plaintiff's counsel also asked its Beijing office to locate defendants' Chinese addresses. *Id.* ¶ 22.  Its efforts, too, proved unsuccessful.  *Id.*

Based on these unsuccessful efforts to identify a *bona fide* physical address for defendants, and the fact that defendants were online merchants, plaintiff's counsel concluded that the most effective—and the only realistic—means to reasonably serve defendants and thereby notify them of the instant suit would be by email.  *Id.* ¶ 25.

**B.      This Litigation**

      **1.      January 21, 2022: The Court Order Authorizing Service on Defendants by Email**

On January 21, 2022, Kelly Toys secured authorization from the judge then sitting in Part I of this Court to initiate this case under seal.  Dkt. 1.

The same day, Kelly Toys applied for—and this Court granted—a sealed *ex parte* temporary restraining order.  Dkts. 2, 20 ("TRO").  The application was supported by the then-sealed complaint, Dkt. 6, a memorandum of law, Dkt. 17, and a declaration, Dkt. 18, that attested to the above unsuccessful investigative efforts to locate defendants' physical address.  The TRO authorized plaintiff to serve defendants by alternative means, pursuant to Federal Rule of Civil Procedure 4(f)(3), namely by sending the following to seven email addresses associated with defendants (1) PDF copies of the TRO, the summons, and the Complaint, and (2) a link to a secure website created through Rmail.com, which provides a registered email service that confirms to its users when emails and their attachments have been sent, delivered to, and received by the emails' addressees.  TRO at 13–14; *see also* Futterman Aff. ¶ 4.  The seven email addresses to be served, based on counsel's research, were service@squishmallowsus.com, service@squishmallows-us.com, refund@squishmallows-us.com, service@squishmollaws.com, refund@squishmollaws.com, official@zhixintrade.com, and support@xiangli-technology.com. TRO at 13–14.  In a declaration supporting the TRO application, plaintiff's counsel explained that official@zhixintrade.com and support@xiangli-technology.com appeared on the PayPal receipts of counsel's test purchases, and that the other five addresses appeared on the defendants' websites.  Dkt. 18 ("Nastasi Decl.") ¶ 12.

### 2.      January 28, 2022: Email Service on Defendants

On January 28, 2022, Kelly Toys emailed the TRO, summons, and Complaint by the means set forth in the TRO to the above seven email addresses.  Futterman Aff. ¶ 2.  Through its secure service provider Rmail, Kelly Toys received confirmation that the emails had been delivered to service@squishmallows-us.com, official@zhixintrade.com, and support@xiangli-technology.com.  *Id.* Ex. A at 1; *see also* Dkt. 21 (certification of service).  The same Rmail confirmation showed that Kelly Toys' email had had been unsuccessful in reaching service@squishmallowsus.com, refund@squishmallows-us.com, service@squishmollaws.com, and refund@squishmollaws.com.  Futterman Aff. ¶ 2; *id.* Ex. A at 1.

On February 2, 2022, the Court converted the TRO into a preliminary injunction and unsealed the case.  Dkts. 4, 5.

### 3.      February 24, 2022: Issuance of the Certificate of Default

Defendants did not appear in this suit, and did not answer or otherwise respond to the plaintiff's Complaint.

On February 24, 2022, Kelly Toys filed a proposed certificate of default and a supporting affidavit.  Dkts. 23, 24.  Kelly Toys so moved on the basis that, after service by email had been effected on defendants on January 28, 2022, defendants' 21-day deadline to answer or otherwise respond to the Complaint had expired on February 18, 2022.  *See* Dkt. 24 ¶¶ 8–9.  That day, the Clerk of Court issued the certificate of default.  Dkt. 25.

4.      **February 25, 2022–April 19, 2022: Defendants Respond to Plaintiff's Counsel and Appear; Settlement Discussions Occur; Default Judgment Is Vacated on Consent; and Defendants Move to Dismiss for Lack of Proper Service**

On February 25, 2022, defendants' counsel emailed Kelly Toys's counsel to discuss potential settlement.  Futterman Aff. ¶ 7.  In that email, defendants did not take issue with the means—or effectiveness—of the electronic service on defendants.  *Id.*

On March 10, 2022, defendants' counsel appeared in this case.  Dkt. 27.  On March 17, 2022, defendants moved to vacate the Clerk's entry of default and filed a supporting memorandum of law.  Dkts. 28, 29.

On March 24, 2022, a month after initially making contact with plaintiff's counsel, defense counsel stated to plaintiff's counsel, for the first time, that defendants objected to the means by which they had been served.  Futterman Aff. ¶ 7.

On March 28, 2022, Kelly Toys consented to vacatur of the certificate of default and to litigating the case on the merits.  Dkt. 31.  On March 29, 2022, the Court granted defendants' unopposed motion to vacate the certificate of default.  Dkt. 32.  Until April 19, 2002, defense counsel continued to broach settlement with Kelly Toys.  *Id.*

On April 19, 2022, defendants filed the instant motion to dismiss the complaint for lack of proper service, under Rule 12(b)(5), and filed a memorandum of law, affidavit, and exhibits in support.  Dkt. 33 ("Def. Mem.").  On May 10, 2022, Kelly Toys opposed the motion and filed the Futterman Affidavit and exhibits in support.  Dkts. 35 ("Pl. Opp."), 36.  On May 24, 2022, defendants replied.  Dkt. 37 ("Reply").

5.      **Defendants' Declarations in Opposition to Plaintiff's Declarations as to Their Investigative Efforts**

In support of their motion to dismiss, defendants filed two affidavits of Zhenbei He, who states that he owns the online stores affiliated with all three websites.  Dkts. 29-3 ("First He

Aff."), 33-3 ("Second He Aff.").  He declares that the Stores had not been aware of the instant

litigation until February 25, 2022, First He Aff. ¶ 6, and that he retained local counsel on March

9, 2022, *id.* ¶ 7.

Relevant here, in his second affidavit, attached to defendants' reply brief in support of the

instant motion to dismiss, He states that defendants "have always posted accurate address

information on [their] 'Contact Us' page[s]."  Second He Aff. ¶ 3.  He attaches a screenshot of

the "Contact Us" page of www.squishmallowsus.com, apparently taken on August 15, 2021, and

undated screenshots of the two other URLs' "Contact Us" pages, which display what appear to

be Chinese addresses in Latin letters.  *See id.*, Ex. A.  He further declares that his Stores

accurately listed their Chinese addresses with PayPal.  Second He Aff. ¶¶ 5–6.  Those purported

addresses are portrayed in Chinese characters.  *See id.*, Ex. B.  And, according to He, defendants'

Chinese addresses could have been obtained by "a simple Google search."  Second He Aff. ¶ 6.

He also states that plaintiff's counsel could have emailed the Stores at their customer email

addresses listed on their websites to ask for their physical addresses.  *See id.* ¶ 7 ("The Stores

routinely and timely respond to customer email inquiry regarding return mail address.").  He

attaches screenshots of emails from official@zhixintrade.com, service@qinheo.com, and

support@xiangli-technology.com, which he states identify the Stores' physical addresses in

China to customers.  *Id.*, Ex. D.  It is not clear which email address is affiliated with which URL.

*See, e.g.*, TRO at 13–14 (inconclusive); Dkt. 35-1 (Rmail receipt, same); Second He Aff., Ex. D

(screenshots of email from each account providing Chinese address to customers, same).

However, official@zhixintrade.com and support@xiangli-technology.com were two of the email

addresses as to which delivery of the TRO, summons, and Complaint was successful.  Futterman

Aff., Ex. A at 1.  The address service@qinheo.com was not identified by plaintiff as an email address to be served.

## II.   Discussion

### A.   Applicable Legal Standards on a Motion to Dismiss Under Rule 12(b)(5)

"Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied." *Dynegy Midstream Servs. v. Trammochem*, 451 F.3d 89, 94 (2d Cir. 2006) (citation omitted).  When "a defendant challenges service of process, the burden of proof is on the plaintiff to show the adequacy of service." *DeLuca v. AccessIT Grp., Inc.*, 695 F. Supp. 2d 54, 64 (S.D.N.Y. 2010) (citations and internal quotation marks omitted); *see also Burda Media, Inc. v. Viertel*, 417 F.3d 292, 298 (2d Cir. 2005).  "Plaintiff must meet this burden by making a *prima facie* case of proper service 'through specific factual allegations and any supporting materials.'" *Sikhs for Just. v. Nath*, 850 F. Supp. 2d 435, 440 (S.D.N.Y. 2012) (quoting *Kwon v. Yun*, No. 05 Civ. 1142 (GEL), 2006 WL 416375, at *2 (S.D.N.Y. Feb. 21, 2006)).  "Conclusory statements are insufficient to overcome a defendant's sworn affidavit that he was not served." *Darden v. DaimlerChrysler N. Am. Holding Corp.*, 191 F. Supp. 2d 382, 387 (S.D.N.Y. 2002) (citation omitted).  "In considering a Rule 12(b)(5) motion to dismiss for insufficient service of process, a court must look[] to matters outside the complaint to determine whether it has jurisdiction." *Cassano v. Altshuler*, 186 F. Supp. 3d 318, 320 (S.D.N.Y. 2016).  "A court analyzes a Rule 12(b)(5) motion to dismiss for insufficient service of process by looking to Rule 4, which 'governs the content, issuance, and service of a summons." *Herrera v. Manna 2nd Ave. LLC*, No. 20 Civ. 11026 (GHW) (KHP), 2021 WL 5235142, at *2 (S.D.N.Y. Oct. 22, 2021) (quoting *DeLuca*, 695 F. Supp. 2d at 64) (citing Fed. R. Civ. P. 4), *report and recommendation adopted*, No. 20 Civ. 11026 (GHW), 2021 WL 5234406 (S.D.N.Y. Nov. 10, 2021).

11

"Under Rule 4(h), unless federal law provides otherwise or the defendant's waiver has been filed, a domestic or foreign corporation must be served in one of two ways." *Astor Chocolate Corp. v. Elite Gold Ltd.*, 510 F. Supp. 3d 108, 122 (S.D.N.Y. 2020).  Rule 4(h)(1) concerns service of a corporation within a judicial district of the United States, and is inapplicable here.

Conversely, Rule 4(h)(2) covers service of a corporation "at a place not within any judicial district of the United States."  Such service may be effected "in any manner prescribed by Rule 4(f) for serving an individual, except personal delivery under (f)(2)(C)(i)."  Fed. R. Civ. P. 4(h)(2).

Rule 4(f)(1) "allows for service of process 'by any internationally agreed means reasonably calculated to give notice, such as those means authorized by the Hague Convention.'" *Burda Media*, 417 F.3d at 299 (quoting Fed. R. Civ. P. 4(f)(1)).  "Rule 4(f)(2)(A) provides that a party may effect service on an individual in a foreign country by a method reasonably calculated to give notice 'as prescribed by the foreign country's law for service in that country in an action in its courts of general jurisdiction.'"  *Ansell Healthcare, Inc. v. Maersk Line*, 545 F. Supp. 2d 339, 342 (S.D.N.Y. 2008) (quoting Fed. R. Civ. P. 4(f)(2)(A)).  Rule 4(f)(3), in turn, "permits a Court to order that service of a summons be made by other means, 'so long as the ordered means of service (1) is not prohibited by international agreement; and (2) comports with constitutional notions of due process.'"  *Vega v. Hastens Beds, Inc.*, 339 F.R.D. 210, 217 (S.D.N.Y. 2021) (quoting *Cunningham v. Gen. Motors LLC*, No. 20 Civ. 3097 (AKH), 2020 WL 4748157, at *1 (S.D.N.Y. Aug. 17, 2020)).

### B.   Application

In moving for dismissal under Rule 12(b)(5), defendants argue that Kelly Toys' service, by the electronic means authorized in the TRO, was deficient because the Hague Convention

governs this action and required that defendants be served at their physical addresses.  Def. Mem. at 2–6.  Kelly Toys responds with two arguments.  First, the Hague Convention does not apply here, because defendants' physical address was unknown to plaintiffs despite reasonably diligent efforts to learn it, and the service here was proper under Rule 4(f)(3).  Pl. Opp. at 3–4. Alternatively, even if the Hague Convention applied, it did not prohibit the alternative service authorized under the TRO, and hence was permissible under Rule 4(f)(2)(A) or Rule 4(f)(3).  *Id.* at 4–12.

For the reasons that follow, the Court agrees with Kelly Toys' first argument, that the Hague Convention does not apply, and that service was properly effected under Rule 4(f)(3). The Court does not reach plaintiff's alternative arguments.

### 1.       The Hague Convention Does Not Apply Here

The United States and China are signatories to the Hague Service Convention.[4]  The Hague Convention seeks to "simplify, standardize, and generally improve the process of serving documents abroad."  *Water Splash, Inc. v. Menon*, 137 S. Ct. 1504, 1507 (2017).

"[C]ompliance with the Convention is mandatory in all cases to which it applies."  *Smart Study Co. v. Acuteye-Us*, No. 21 Civ. 5860 (GHW), 2022 WL 2872297, at *4 (S.D.N.Y. July 21, 2022) (quoting *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 705 (1988)) (alteration in *Smart Study*).  However, and critically, "[t]he Hague Convention does not apply 'where the address of the person to be served with the document is not known.'"  *Id.* at *5; (quoting *Advanced Access Content Sys. Licensing Adm'r, LLC v. Shen*, No. 14 Civ. 1112 (VSB), 2018 WL 4757939, at *4 (S.D.N.Y. Sept. 30, 2018) (citing the Hague Convention on the Service

---

[4] *See* Status Table, Members of the Organisation, Hague Conference on Private International Law, https://www.hcch.net/en/instruments/conventions/status-table (last visited August 12, 2022).

Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, art. I)); *see also S.E.C. v. Lines*, No. 07 Civ. 11387 (DLC), 2009 WL 3179503, at *3 (S.D.N.Y. Oct. 2, 2009) ("As Article I of the Hague Convention quite understandably recognizes, it shall not apply where the address of the person to be served with the document is not known." (internal quotations and citation omitted)); *Bravetti v. Liu*, No. 12 Civ. 7492 (MAS) (TJB), 2013 WL 6501740, at *3 (D.N.J. Dec. 11, 2013) (same); *Compass Bank v. Katz*, 287 F.R.D. 392, 394 (S.D. Tex. 2012) (same); *Noco Co., Inc. v. Zhejiang Quingyou Elec. Com. Co.*, 338 F.R.D. 100, 104 (N.D. Ohio 2021) (same), *on reconsideration in part*, No. 20 Civ. 1170, 2021 WL 374617 (N.D. Ohio Feb. 3, 2021); *Bortolus v. Magical Cruise Co., Ltd.*, No. 07 Civ. 1864 (GJK), 2008 WL 2595105, *3 (M.D. Fla. 2008) (same); *BP Prods. N. Am., Inc. v. Dagra*, 232 F.R.D. 263, 264 (E.D. Va. 2005) (same).  "Courts in this Circuit have found an address is 'not known' if the plaintiff exercised reasonable diligence in attempting to discover a physical address for service of process and was unsuccessful in doing so." *Shen*, 2018 WL 4757939, at *4; *see also Smart Study*, 2022 WL 2872297, at *4 (same); *Philip Morris USA Inc. v. Veles Ltd.*, No. 06 Civ. 2988 (GBD), 2007 WL 725412, at *1, *3 (S.D.N.Y. Mar. 12, 2007) (same).  Courts in other circuits, too, have so found.  *See, e.g.*, *Compass Bank*, 287 F.R.D. at 394–95; *Opella v. Rullan*, No. 10 Civ. 21134, 2011 WL 2600707, at *5 (S.D. Fla. June 29, 2011); *Rubie's Costume Co., Inc. v. Yiwu Hua Hao Toys Co.*, No. 18 Civ. 1530 (RAJ), 2019 WL 6310564, at *3 (W.D. Wash. Nov. 25, 2019) (requiring "reasonable effort" of plaintiff).

Such is the case here.  Kelly Toys' counsel has attested—credibly and with specificity— that, at the time it applied for the TRO, it did not know defendants' physical addresses despite having exercised reasonable diligence to try to ascertain those addresses.  As explained above, counsel searched and found a California physical address cited on www.squishmallowsus.com

and www.squishmollaws.com, and a London physical address cited on www.squimallows-us.com.  Futterman Aff. ¶ 8; *id.* Ex. C.[5]  Counsel corroborates this affirmation by providing a screen grab from the latter website.  It reflects a date of December 21, 2021 and displays the London address.  Futterman Aff., Ex. B.  Counsel then investigated whether those addresses were connected to defendants, by dispatching an investigator to those locations.  The investigator determined that the locations were not associated with defendants.  Futterman Aff. ¶¶ 11–12.  Counsel then tracked down the locations on defendants' shipping labels—again by dispatching an investigator, this time to California, New Jersey, and New York.  But these locations, too, were revealed as unconnected to defendants.  *Id.* ¶¶ 16, 18, 20–21.  Kelly Toys' counsel even reached out to KWT's counsel.  It learned, however, that the label on the shipment from California had been forged.  *Id.* ¶ 19.  Finally, counsel searched defendants' "WhoIs" information, which alerted counsel that defendants were located in China.  *Id.* ¶¶ 13, 23.  But investigation by plaintiff's local counsel, situated in Beijing, failed to identify a physical address in China for defendants.  *Id.* ¶ 22.

These extensive and multi-dimensional efforts establish that Kelly Toys, through counsel, "exercised reasonable diligence in attempting to discover a physical address for service of process."  *Shen*, 2018 WL 4757939, at *4.  Courts in this District and others have repeatedly found reasonable diligence, and thus an exemption from the Hague Convention, where plaintiff made comparable, or less vigorous, efforts.  *See, e.g., Philip Morris*, 2007 WL 725412, at *1, *3 (approving service of online retailers by email and fax, where service by mail to listed physical addresses had been attempted but was returned, and where email addresses and fax numbers

---

[5] Counsel affirms that at no time did anyone at its office find different addresses for defendants on those websites.  Futterman Aff. ¶ 10.

appeared operational); *Shen*, 2018 WL 4757939, at \*4 (finding efforts reasonably diligent, and approving service by email, where plaintiff "investigat[ed]" the physical addresses associated with Chinese online retailer's domain names, searched the internet, "called known phone numbers, and conducted in-person visits where reasonable"); *Prediction Co. v. Rajgarhia*, No. 09 Civ. 7459 (SAS), 2010 WL 1050307, at \*2 (S.D.N.Y. Mar. 22, 2010) (finding that plaintiff's address was "not known," and that the Hague Convention was thus inapplicable, where plaintiff had "actively, though unsuccessfully, attempted to obtain [Indian defendant's] address in a variety of ways"); *Microsoft Corp. v. Does*, No. 12 Civ. 1335 (SJ) (RLM), 2012 WL 5497946, at \*2 (E.D.N.Y. Nov. 13, 2012) ("Defendants operate via the Internet, using usernames, and understandably, do not wish to be identified or located.  They have used sophisticated means to conceal their identities and locations.  Despite the most diligent efforts on the part of Plaintiffs, Defendants cannot be located.  Accordingly the Hague Convention is not applicable to them."); *Chanel, Inc. v. Song Xu*, No. 09 Civ. 2610 (CGC), 2010 WL 396357, at \*1, \*3 (W.D. Tenn. Jan. 27, 2010) (finding addresses not known where plaintiff hired private investigator to verify China-based addresses listed by defendants, and after investigator concluded that purported addresses omitted and interchanged street names, building numbers, postal codes, and city sections, and after follow-up investigations in public databases and directories were unsuccessful); *BP Prods.*, 232 F.R.D. at 264 (finding addresses not known after plaintiff attempted serve at defendants' last two known addresses through the Hague Convention, and after plaintiffs hired an investigative firm in Pakistan which did "[a] month of searching through telephone records, utility records, property records, various housing authorities' records, law enforcement records and other personal identifying databases" but were unable to locate defendant); *Rubie's Costume Co.*, 2019 WL 6310564, at \*3 (permitting email service on China-based defendants "where Plaintiff has

been unable to ascertain physical addresses for service after a reasonable effort or where there is evidence defendants are attempting to evade service").

Defendants argue that, to be found to have used reasonable diligence, a plaintiff must hire a private investigator in China to verify whether a physical address associated with a domain name is in fact authentic. For this proposition, they rely on *Chanel, Inc.*, 2010 WL 396357, and *BP Products*, 232 F.R.D. at 264. Reply at 2. Those cases do not assist defendants. There, private investigators had been hired to verify the addresses in China listed on defendants' websites, but which proved bogus. Here, plaintiff undertook the same investigative efforts as to the physical addresses listed on defendants' websites, which were in California and London. And, as in *Chanel, Inc.* and *BP Products*, this investigation revealed defendants' web-listed addresses to be bogus. Notably, when plaintiff's counsel learned by other means that defendants appeared to be located somewhere in China, counsel took the additional step of tasking counsel from its Beijing office to try to find that address. But that, too, led nowhere.

In these circumstances, the Court finds that Kelly Toys' efforts to locate defendants' physical addresses were reasonably diligent, and that the inability of these efforts to identify these addresses made these "not known" for the purposes of the Hague Convention. The Convention therefore, by its terms, did not apply.

The sequential attestations by He on behalf of defendants do not disturb the finding of reasonable diligence. He merely affirms that he is the owner of the Stores and that his businesses are located at the addresses displayed on screenshots of his URLs' "Contact Us" pages. Second He Aff. ¶ 3; *id.*, Ex. A. But even assuming that those addresses trace to real locations—and are ones at which defendants are today located—does not impugn plaintiff's showing of reasonable diligence. *See Shen*, 2018 WL 4757939, at *5 (finding, under nearly identical facts, that

17

defendants' "evidence . . . does not shed any light on whether [p]laintiff exercised reasonable diligence in attempting to discover a physical address for [d]efendants for service of process under the Hague Convention").  Defendants may well have a physical address somewhere on Earth.  But defendants' disclosure, in this litigation, of where their address today is does not demonstrate that plaintiff's efforts to locate defendants at an earlier time and by the means indicated was not reasonably diligent.

He also surmises that had plaintiff taken other steps which He claims that it did not take—such as, conducting a Google search, or obtaining discovery of defendants' registered addresses from PayPal, Second He Aff. ¶¶ 4–7—plaintiff might have found defendants' addresses.  *See also id.*, Exs. C, D.  That speculation is unworthy of credit.  Plaintiff attests that it relied on "WhoIs," a domain search engine designed to locate business addresses.  It was reasonable for plaintiff to rely on that search engine and to conclude that information obtainable via a Google search would be captured by "WhoIs."  Moreover, plaintiff obtained two email addresses—official@zhixintrade.com and support@xiangli-technology.com—associated with defendants from its sample purchases through PayPal.  It is implausible that plaintiff would have missed—or worse, disregarded—defendants' physical addresses, had those addresses indeed been listed in the test purchases' PayPal receipts.  In any event, even if it could be shown that He's proposed alternative investigative measures would have succeeded—and there is no non-speculative evidence to that effect—plaintiff was not obliged to deploy every imaginable investigative technique, but merely to exercise reasonable diligence.  As measured by the case law, plaintiff's suite of investigative steps met that standard.

In a final argument, He claims that defendants' ostensible current addresses have appeared on the URLs' "Contact Us" pages all along.  Second He Aff. ¶ 3.  Defendants'

submissions do not substantiate that claim.  Of the three screenshots appended to the Second He

Affidavit, two are undated, and one was taken on August 15, 2021.  *Id.*, Ex. A.  Those

screenshots do not establish that defendants' addresses appeared on their sites during the period

when plaintiff sought to ascertain them.  And the undated screenshots are in conflict with

plaintiff's screenshot, dated December 21, 2021, displaying a *London* address on one of

defendants' sites, and plaintiff's counsel's attestation that their attorneys, in reviewing

defendants' websites, had never seen any address other than the California or London addresses.

Futterman Aff. ¶ 10.  He's implicit suggestion that Kelly Toys fabricated its claim to not have

observed such an address on defendants' URLs is not, without more, credible.  Had Kelly Toys

there observed such an address, effecting service at that address would have been far easier,

quicker, and less costly than concocting a sham investigation showing the absence of a known

physical address, all presumably in the hope that defendants, if served by email, would not

appear, so as to enable Kelly Toys to pursue a default judgment.  Such a scheme is all the more

implausible, given that Kelly Toys promptly consented to a vacatur of default after defense

counsel had appeared and so moved.  *See* Dkt. 31.  Instead, it seems far more plausible that

defendants changed their listed addresses as time progressed.  *See, e.g.*, *Microsoft Corp.*, 2012

WL 5497946, at *2 (finding that plaintiffs had used "diligent efforts" to identify defendants who

"operate[d] via the Internet" and had "sophisticated means to conceal their identities and

locations," and thus that the Hague Convention was "not applicable").

      Defendants, in sum, have not rebutted plaintiff's ample *prima facie* showing that it made

reasonably diligent, but unsuccessful efforts to uncover defendants' physical addresses.  Kelly

Toys was accordingly not bound by the Hague Convention's requirement to serve defendants at

their physical addresses.

### 2. Service Was Proper Under Rule 4(f)(3) and Comported with Due Process

Because the Hague Convention does not apply here, given the absence of a known physical address,[6] the decisive inquiry is whether Kelly Toys' service of defendants by email, as authorized in the TRO, satisfied either Rule 4(f)(2)(A) or 4(f)(3).

---

[6] Because the Hague Convention does not apply, the Court does not have occasion to determine whether service by email to a China-based defendant under Rule 4(f)(3) would have been proper under the Convention. *See* Pl. Opp. at 4–12 (Kelly Toys so arguing). That issue is in ferment in this District, as a result of the thoughtful recent decision by Judge Woods on this point in *Smart Study*, 2022 WL 2872297, at \*9–10. Judge Woods there departed from a sizable body of caselaw from district courts in this Circuit holding that email service was permitted under the Convention whenever a sovereign had not explicitly objected to such service. The earlier cases, Judge Woods noted, had relied on the fact that China, and other countries, had objected to service on defendants within their borders by "postal channels," but had been silent on whether they could be served by email. *See id.* (citing, *inter alia*, *Sulzer Mixpac AG v. Medenstar Indus. Co.*, 312 F.R.D. 329, 332 (S.D.N.Y. 2015); *Kaneka Corp. v. Purestart Chem Enter. Co.*, No. 16 Civ. 4861 (MKB) (SIL), 2017 WL 11509784, at \*3 (E.D.N.Y. Oct. 17, 2017); *WeWork Cos. Inc. v. WePlus (Shanghai) Tech. Co.*, No. 18 Civ. 4543 (EJD), 2019 WL 8810350, at \*2–3 (N.D. Cal. Jan. 10, 2019)); *id.* n.9 (collecting more such cases). Those cases had relied on reasoning in the Supreme Court's controlling opinion in *Volkswagen Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 706–07 (1988). But that analysis, Judge Woods noted, has been overtaken by the decision in *Water Splash, Inc. v. Menon*, 137 S. Ct. 1504 (2017), in which, construing *Schlunk*, the Court held that "the Convention meant to set forth simple and certain methods of service [on] foreign litigants," which include service by postal channels on parties located within a signatory's borders, but do not mention service by email. *Smart Study*, 2022 WL 2872297, at \*10. Judge Woods reasoned that, in light of the analysis in *Water Splash*, it is not persuasive to infer a country's consent to all unobjected-to means of service that the Hague Convention does not list. *Id.* at \*10 ("Countries, including China, objected to Article 10 of the Convention because, by its clear language, the service methods identified were specifically permitted unless objected to. The same cannot be said of email service. There is no reason for a nation to affirmatively object to a service method that is not authorized or identified because the Convention 'specifies certain approved methods of service and "pre-empts inconsistent methods of service" wherever it applies.'" (quoting *Prem Sales, LLC v. Guangdong Chigo Heating & Ventilation Equip. Co.*, 494 F. Supp. 3d 404, 416 (N.D. Tex. 2020) (quoting *Water Splash*, 137 S. Ct. at 1507))). Judge Woods's analysis tracks that of courts in other districts considering the permissibility under the Convention of email service on China-based defendants. *See, e.g.*, *Anova Applied Elecs., Inc. v. Hong King Grp., Ltd.*, 334 F.R.D. 465, 472 (D. Mass. 2020) ("To permit service by e-mail would bypass the means of service set forth in the Convention."); *CRS Recovery, Inc. v. Laxton*, No. 06 Civ. 7093 (CW), 2008 WL 11383537, at \*2 (N.D. Cal. Jan. 8, 2008) ("An order allowing email service on a defendant located in China would contravene the treaty, and is not permitted under Rule 4(f)(3)."); *Facebook, Inc. v. 9 Xiu Network (Shenzhen) Tech. Co.*, No. 19 Civ. 1167 (JST),

Except for prohibitions by international agreement, there is "generally . . . no hierarchy among the subsections in Rule 4(f)." *Advanced Aerofoil Techs., AG v. Todaro*, No. 11 Civ. 9505 (ALC) (DCF), 2012 WL 299959, at *1 (S.D.N.Y. Jan. 31, 2012); *see also Merrimack Mut. Ins. Co. v. New Widetech Indus. Co.*, No. 20 Civ. 546 (MPS), 2020 WL 5879405, at *1 (D. Conn. Oct. 2, 2020) (same); *Sulzer*, 312 F.R.D. at 330 ("Service under subsection [4(f)](3) is neither a last resort nor extraordinary relief.  It is merely one means among several which enables service of process on an international defendant." (citation omitted) (alteration in *Sulzer*)).

The Court will therefore consider the propriety of the service here under Rule 4(f)(3). Finding service proper under that provision—a point defendants do not contest—the Court need not reach Rule 4(f)(2)(A), as to which the parties disagree about the propriety of such service.

The pertinent facts are undisputed.  Plaintiff proffers without refutation that it served defendants via the email addresses identified above.  And He, the proprietor of the Stores that operate the URLs, does not dispute, and indeed implicitly acknowledges, that the Stores received process of service via email.  *See* First He Aff. ¶ 6 ("I was first aware of the litigation on Feb. 25, 2022").  And defendants do not contend that, provided the Hague Convention does not apply, their service by email did not comport with Rule 4(f)(3) and constitutional due process.  *See* Def. Mem.; Reply.

Such service, in fact, clearly complied with both.  In general, under Rule 4(f)(3), it is enough that the means of service were as "directed by the court and [is not] prohibited by international agreement."  *Zhang v. Baidu.com Inc.*, 932 F. Supp. 2d 561, 565 (S.D.N.Y. 2013)

---

2020 WL 5036085, at *8 (N.D. Cal. Aug. 19, 2020) ("Service by e-mail on defendants in China is not one of the Hague Service Convention's approved methods of service."); *Luxottica Grp. S.p.A. v. P'ships & Unincorp. Assocs. Identified on Schedule "A*," 391 F. Supp. 3d 816, 827 (N.D. Ill. 2019) ("Because email would bypass the methods of service the Hague Convention authorizes, the Convention preempts it as inconsistent.").

(cleaned up) (citing *Advanced Aerofoil*, 2012 WL 299959, at *1; *Ehrenfeld v. Salim a Bin Mahfouz*, No. 04 Civ. 9641 (RCC), 2005 WL 696769, at *2 (S.D.N.Y. Mar. 23, 2005)).  In addition, "'the proposed means of service must comport with constitutional notions of due process,' which requires 'notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'"  *Shen*, 2018 WL 4757939, at *5 (first quoting *AMTO, LLC v. Bedford Asset Mgmt., LLC*, No. 14 Civ. 9913 (KMK), 2015 WL 3457452, at *4 (S.D.N.Y. June 1, 2015); then *Luessenhop v. Clinton Cnty., N.Y.*, 466 F.3d 259, 269 (2d Cir. 2006)); *see also Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

The statutory factors are met.  The Court authorized the alternative means of service at issue here in the TRO issued on January 21, 2022.  Those means included, essentially, emailing PDFs of the papers and a link to a secure website.  TRO at 13–14; Futterman Aff. ¶ 6.  That service was effected on January 28, 2022.  *See* Dkt. 21.

The service authorized by the Court under Rule 4(f)(3) also comports with constitutional due process.  "Service by email alone comports with due process where a plaintiff demonstrates that the email is likely to reach the defendant."  *Vega*, 339 F.R.D. at 217 (citing *F.T.C. v. PCCare247 Inc.*, No. 12 Civ. 7189 (PAE), 2013 WL 841037, at *4 (S.D.N.Y. Mar. 7, 2013)); *see also Philip Morris*, 2007 WL 725412, at *3 (authorizing service by email where "defendants conduct business extensively . . . through their Internet websites and correspond regularly with customers via email" and rejecting "[d]efendants' objections about theoretical reliability of email service" where plaintiff "amply demonstrated the high likelihood that defendants would receive and respond to email communications").  "As a general matter, in those cases where service by email has been judicially approved, the movant supplied the Court with some facts indicating

that the person to be served would be likely to receive the summons and complaint at the given email address." *NYKCool A.B. v. Pac. Int'l Servs., Inc.*, 66 F. Supp. 3d 385, 391 (S.D.N.Y. 2014) (internal quotations and citation omitted), *adhered to on reconsideration*, No. 12 Civ. 5754 (LAK), 2015 WL 998455 (S.D.N.Y. Mar. 5, 2015); *see also Williams-Sonoma Inc. v. Friendfinder Inc.*, No. 06 Civ. 6572 (JSW), 2007 WL 1140639, at *2 (N.D. Cal. Apr. 17, 2007) (authorizing service by email where plaintiff "has established that the email accounts [it has] for defendants have been effective means of communicating with defendants").

The Court had a solid basis to so find here, and reaffirms that finding. Defendants were online retailers which, by their own admission, "routinely and timely respond to customer email inquiry regarding return mail address." Second He Aff. ¶ 7. Kelly Toys identified email addresses for each URL. Three of defendants' email addresses, when served with process here, did not send a bounce back to the sender. Futterman Aff., Ex. A; *see also* Second He Aff., Ex. D (screenshots of emails in which the Stores respond to customer inquiries). Further, defendants undisputedly received actual notice of this litigation—by all indications as a result of these means of service—insofar as defendants engaged in settlement discussions with plaintiff soon after the service, and thereafter appeared in this case and began to defend it. The Court accordingly concludes that Kelly Toys' means of alternative service complied—comfortably— with constitutional due process. *See Mattel, Inc. v. Animefun Store*, No. 18 Civ. 8824 (LAP), 2020 WL 2097624, at *4–5 (S.D.N.Y. May 1, 2020) (finding that service via email comported with due process requirements where the defendants "engaged in online business and regularly communicated with customers through email," counsel for the defendants informed the plaintiff of his representation and the defendants' knowledge of the action, and counsel for the defendants "engaged in settlement discussions and actively participated in the discovery process.").

In sum, Kelly Toys' service of defendants by email was proper under Rule 4(f)(3). The Court accordingly denies defendants' motion to dismiss.

## CONCLUSION

For the foregoing reasons, the Court denies defendants' motion to dismiss for deficient service. The Clerk of Court is respectfully directed to terminate the motion pending at docket 33. The Court will, by separate order, schedule an initial pretrial conference.

SO ORDERED.

*Paul A. Engelmayer*

PAUL A. ENGELMAYER
United States District Judge

Dated: August 26, 2022
       New York, New York

24